[No. F027371. Fifth Dist. Mar. 17, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
ELLIS EDWARD EVANS, Defendant and Appellant.

**[Opinion certified for partial publication.†]**

†Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts 2, 3, and 4 of the DISCUSSION.

**COUNSEL**

Alex Green, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Edgar A. Kerry and Julie Erdmann, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**THAXTER, J.**—Ellis Edward Evans (appellant) was convicted by a jury of a felony violation of Vehicle Code section 23152, subdivision (a), driving under the influence (count I), a felony violation of Vehicle Code section 23152, subdivision (b), and section 23175, driving with a blood-alcohol concentration of 0.08 percent or more, having suffered three prior convictions for driving under the influence within the past seven years (count II), a misdemeanor violation of Vehicle Code section 31, giving false information to a peace officer (count III), and a misdemeanor violation of Vehicle Code section 14601.2, subdivision (a), driving on a license suspended for driving under the influence, and having three priors for the same within the past five years (count IV).

Appellant was sentenced to three years in state prison for driving under the influence. He was also sentenced to a county jail term of 18 months for the misdemeanors, to be served after release from state prison. Appellant was sentenced to three years for having a blood-alcohol concentration of 0.08 percent or greater, but the sentence was stayed pursuant to Penal Code section 654.

Appellant did not testify at trial and requested that the court instruct the jury with CALJIC Nos. 2.60 and 2.61 explaining his right not to testify and

cautioning the jury not to draw any adverse inferences from his exercise of that right. Apparently through inadvertence the court failed to give the requested instructions. In the published portion of this opinion we will conclude the court's failure to give the instructions was error pursuant to *Carter* v. *Kentucky* (1981) 450 U.S. 288 [101 S.Ct. 1112, 67 L.Ed.2d 241]. We will further conclude that such error is subject to harmless error analysis. In the unpublished portion of the opinion we will find the error harmless and will reject appellant's other contentions of error.

## FACTS[1].

At approximately 9:27 p.m. on April 19, 1996, Hanford Police Officers Todd Talent and David Scott were dispatched to the area of an alleyway two blocks from their location. The dispatch described two men in the alleyway, one possibly with a gun. The men were described as White males wearing dark clothing.

While driving to the alley, Officer Talent saw a jogger and briefly talked with him to determine whether he was the man with the gun. After initial questioning revealed the jogger was not the suspect, the jogger told the officers he heard a couple of people in the alley. He opined they were the persons the officers were looking for. Officer Talent estimated they spent no more than 30 seconds with the jogger.

As the officers arrived at the alley, they noticed it was dark and no one appeared to be around. Officer Talent then saw a vehicle with two White males exiting the alley. Officer Talent estimated he first observed the car about two minutes after receiving the dispatch. Believing these were the men described in the dispatch, the officers stopped the vehicle. No other vehicles or pedestrians were seen in the alley.

Appellant was the car's driver. After being stopped, he alighted from the vehicle. He identified himself as Timothy Welcher. Officer Scott later searched the vehicle and found a wallet containing an identification card bearing a photograph of appellant, showing his correct name.

Officer Scott detected a strong odor of an alcoholic beverage on appellant's breath and observed other signs that appellant could be intoxicated, so he requested another arriving officer, Brian Toppan, to administer field sobriety tests. Based on the results of those tests, Officer Toppan arrested

---

[1]The statement of facts relating to the police stop of appellant's vehicle is taken from the hearing on appellant's motion to suppress evidence. The statement of other facts is taken from the evidence presented at trial.

appellant for driving under the influence and transported him to the Kings County jail. The officer informed appellant of his requirement to submit to a breath, blood, or urine test for determination of his blood-alcohol level. Appellant opted to submit a breath sample, but delayed the process for several minutes. The officer then made several attempts to obtain a sample, but appellant did not expel sufficient breath for testing purposes. When approximately a half hour had elapsed, Officer Toppan arranged for a medical technician to draw a blood sample from appellant. The sample was obtained about 11:20 p.m. When tested, the sample revealed appellant's blood-alcohol level was 0.13 percent.

## DISCUSSION

1. *Failure to give a nontestifying defendant's requested jury instructions explaining his constitutional right not to testify may be harmless error.*

A. *Carter error occurred below*

The United States Supreme Court, in *Carter* v. *Kentucky, supra,* 450 U.S. 288, held that a trial judge, upon defendant's request, has a constitutional obligation to instruct the jury not to draw an adverse inference from the defendant's failure to take the stand. (*Id.* at p. 300 [101 S.Ct. at p. 1119].) In *Carter,* the trial court refused to give an instruction which stated: " 'The [defendant] is not compelled to testify and the fact that he does not cannot be used as an inference of guilt and should not prejudice him in any way.' " (*Id.* at p. 294 [101 S.Ct. at p. 1116].)

The Supreme Court further stated: "We have repeatedly recognized that 'instructing a jury in the basic constitutional principles that govern the administration of criminal justice,' [citation], is often necessary. Jurors are not experts in legal principles; to function effectively, and justly, they must be accurately instructed in the law. Such instructions are perhaps nowhere more important than in the context of the Fifth Amendment privilege against compulsory self-incrimination, since '[t]oo many, even those who should be better advised, view this privilege as a shelter for wrongdoers. They too readily assume that those who invoke it are . . . guilty of crime . . . .' [Citation.] And, as the Court has stated, 'we have not yet attained that certitude about the human mind which would justify us in . . . a dogmatic assumption that jurors, if properly admonished, neither could nor would heed the instructions of the trial court . . . .' [Citation.]" (450 U.S. at p. 302 [101 S.Ct. at p. 1120], fns. omitted.)

In this case appellant's counsel requested that the court instruct the jury with CALJIC Nos. 2.60 and 2.61. Both instructions caution the jury that a

defendant's failure to testify cannot be used to infer his guilt. CALJIC No. 2.60 reads: "A defendant in a criminal trial has a constitutional right not to be compelled to testify. You must not draw any inferences from the fact that a defendant does not testify. Further, you must neither discuss this matter nor permit it to enter into your deliberations in any way." CALJIC No. 2.61 reads: "In deciding whether or not to testify, the defendant may choose to rely on the state of the evidence and upon the failure, if any, of the People to prove beyond a reasonable doubt every essential element of the charge against him. No lack of testimony on defendant's part will make up for a failure of proof by the People so as to support a finding against him on any such essential element."

Just before the prosecution rested its case, however, counsel informed the court that appellant, against counsel's advice, was planning to testify. After some colloquy among the court, counsel, and appellant, the court conducted a *Marsden*[2] hearing outside the presence of the prosecutor. When the trial resumed, appellant informed the court that he had decided not to testify. The court then discussed the matter of jury instructions, telling counsel that CALJIC Nos. 2.60 and 2.61 would be given.

"I am going to—I had started to write withdrawn in front of 260 and 261, I'm blackening that out now on the index and putting my initials on that to show that they will be given at the defendant's request."

The defense rested without offering any evidence. The court then instructed the jury, but in doing so failed to read CALJIC Nos. 2.60 and 2.61. The written version of those instructions appear in that portion of the clerk's transcript entitled "Jury Instructions Not Given."

Respondent concedes the instructions should have been given, but argues the error was harmless. Appellant contends *Carter* error is not subject to harmless error analysis.

B.   *Whether Carter error is reversible per se is undecided*

■    Not all federal constitutional errors in the course of a criminal trial require reversal. (*Chapman* v. *California* (1967) 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065].) The United States Supreme Court recognized that some constitutional rights are so basic to a fair trial that their infraction can never be treated as harmless error. (*Id.* at p. 23 [87 S.Ct. at pp. 827-828].) Other constitutional errors, however, may in the setting of a particular case be so unimportant and insignificant that they may be deemed

---

[2]*People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44].

harmless, not requiring automatic reversal of conviction. (*Id.* at p. 22 [87 S.Ct. at p. 827].) Such error can be found harmless only when the reviewing court is able to declare a belief that it was harmless beyond a reasonable doubt. (*Id.* at p. 24 [87 S.Ct. at p. 828].)

When it decided *Carter*, the United States Supreme Court expressly declined to reach the question of whether not giving requested instructions on the defendant's failure to testify could be treated as harmless error. (*Carter* v. *Kentucky*, *supra*, 450 U.S. at p. 304 [101 S.Ct. at p. 1121].)[3] The Supreme Court has not subsequently decided that question.

The only case of which we are aware which seems to consider whether *Carter* error may be treated as harmless is *U.S.* v. *Castaneda* (9th Cir. 1996) 94 F.3d 592. There the trial court rejected a defendant's proposed instruction that the jury should draw no "adverse inference" from his failure to testify. The defendant raised the issue in his appeal from a conviction. The Ninth Circuit Court of Appeals affirmed the conviction, but the opinion is not entirely clear as to the grounds on which the court rested its decision.

The *Castaneda* court first recognized the defendant's constitutional right, under *Carter* v. *Kentucky*, *supra*, 450 U.S. 288, to a jury instruction that " 'minimize[s] the danger that the jury will give evidentiary weight to a defendant's failure to testify.' " (*U.S.* v. *Castaneda*, *supra*, 94 F.3d at p. 596.) It noted, however, that " '[a] defendant is not entitled to any particular form of instruction, nor is he entitled to an instruction that merely duplicates what the jury has already been told.' " (*Ibid.*, quoting *U.S.* v. *Lopez-Alvarez* (9th Cir. 1992) 970 F.2d 583, 597.)

The *Castaneda* court then observed that the trial court gave the jury an instruction on the government's burden to prove guilt beyond a reasonable doubt "and that '[t]he defendant is presumed to be innocent and does not have to testify or present any evidence to prove innocence.' " (*U.S.* v. *Castaneda*, *supra*, 94 F.3d at p. 596.) The court stated that while the specific words "no inference" are preferable in such an instruction, they are not required under *Carter*, and the instruction given "sufficiently covered the substance of Castaneda's proposed instruction: The defendant's failure to testify does not lessen the government's burden to prove its case." (*U.S.* v. *Castaneda*, *supra*, at p. 596.)

---

[3]Appellant places importance on the *Carter* court's comment that ". . . it is arguable that a refusal to give an instruction similar to the one that was requested here can never be harmless." (450 U.S. at p. 304 [101 S.Ct. at p. 1121].) We disagree with appellant. The comment merely states the obvious; i.e., it may be argued that *Carter* error is reversible per se. Of course, it may also be argued that harmless error analysis should apply. Both arguments are made in this case, and we must decide which argument prevails.

At this point in the *Castaneda* opinion it appears the Ninth Circuit found no *Carter* error in the case before it. It went on, however, to add this statement: "Furthermore, in light of the compelling evidence against Castaneda, the district court rendered the error harmless by telling the jury during voir dire that 'an accused cannot be compelled to testify, and if he exercises that right, you cannot allow that to affect your determination of the issues. . . .' See *United States* v. *Hasting*, 461 U.S. 499, 510, 103 S.Ct. 1974, 1981, 76 L.Ed.2d 96 (1983) (applying harmless error analysis to prosecutor's improper comment on defendant's silence.)." (*U.S.* v. *Castaneda, supra,* 94 F.3d at p. 596.)

Because we cannot interpret *Castaneda* as a clear holding that *Carter* error may be harmless, we will analyze the question from the start.[4]

C.   *The Supreme Court has set standards for determining whether a particular constitutional error is reversible per se*

Following its landmark decision in *Chapman* v. *California, supra,* 386 U.S. 18, the United States Supreme Court has frequently applied harmless error analysis in cases involving constitutional errors. (See, e.g., *Yates* v. *Evatt* (1991) 500 U.S. 391, 402 [111 S.Ct. 1884, 1892, 114 L.Ed.2d 432] [erroneous burden-shifting instruction] disapproved on other grounds in *Estelle* v. *McGuire* (1991) 502 U.S. 62, 72, fn. 4 [112 S.Ct. 475, 482, 116 L.Ed.2d 385]; *Arizona* v. *Fulminante* (1991) 499 U.S. 279, 310 [111 S.Ct. 1246, 1265, 113 L.Ed.2d 302] [admission of a coerced confession]; *Clemons* v. *Mississippi* (1990) 494 U.S. 738, 752-754 [110 S.Ct. 1441, 1450-1451, 108 L.Ed.2d 725] [unconstitutionally overbroad jury instructions at the sentencing stage of a capital case]; *Satterwhite* v. *Texas* (1988) 486 U.S. 249, 258 [108 S.Ct. 1792, 1798, 100 L.Ed.2d 284] [admission of evidence at the sentencing stage of a capital case in violation of the Sixth Amendment counsel clause]; *Carella* v. *California* (1989) 491 U.S. 263, 266 [109 S.Ct. 2419, 2421, 105 L.Ed.2d 218] [jury instruction containing erroneous conclusive presumption]; *Pope* v. *Illinois* (1987) 481 U.S. 497, 501-504 [107 S.Ct. 1918, 1921-1923, 95 L.Ed.2d 439] [jury instruction misstating an element of the offense]; *Rose* v. *Clark* (1986) 478 U.S. 570, 582 [106 S.Ct. 3101, 3108, 92 L.Ed.2d 460] [jury instruction containing an erroneous rebuttable presumption]; *Crane* v. *Kentucky* (1986) 476 U.S. 683, 691 [106 S.Ct. 2142,

[4]Appellant relies on *United States* v. *Patterson* (9th Cir. 1981) 648 F.2d 625, in which one defendant claimed the court erred in refusing his proposed instruction explaining the right not to testify. Although it was not necessary to reach the issue in order to decide the appeal, the Ninth Circuit Court of Appeals commented on it, so that similar error would be avoided on retrial. (648 F.2d at p. 631.) The court did not discuss whether the error could possibly be treated as harmless, noting that the United States apparently conceded that failure to give such an instruction is reversible error. (*Ibid.*) There is no such concession in this case.

2147, 90 L.Ed.2d 636] [erroneous exclusion of defendant's testimony regarding the circumstances of his confession]; *Delaware* v. *Van Arsdall* (1986) 475 U.S. 673, 680-681 [106 S.Ct. 1431, 1435-1436, 89 L.Ed.2d 674] [restriction on a defendant's right to cross-examine a witness for bias in violation of the Sixth Amendment confrontation clause]; *Rushen* v. *Spain* (1983) 464 U.S. 114, 117-118 [104 S.Ct. 453, 454-456, 78 L.Ed.2d 267] [denial of a defendant's right to be present at trial]; *United States* v. *Hasting* (1983) 461 U.S. 499, 509 [103 S.Ct. 1974, 1980-1981, 76 L.Ed.2d 96] [improper comment on defendant's silence at trial, in violation of the Fifth Amendment self-incrimination clause]; *Hopper* v. *Evans* (1982) 456 U.S. 605, 612 [102 S.Ct. 2049, 2053, 72 L.Ed.2d 367] [statute improperly forbidding trial court's giving a jury instruction on a lesser included offense in a capital case in violation of the due process clause]; *Kentucky* v. *Whorton* (1979) 441 U.S. 786, 789 [99 S.Ct. 2088, 2089-2090, 60 L.Ed.2d 640] [failure to instruct the jury on the presumption of innocence]; *Moore* v. *Illinois* (1977) 434 U.S. 220, 232 [98 S.Ct. 458, 466, 54 L.Ed.2d 424] [admission of identification evidence in violation of the Sixth Amendment confrontation clause]; *Brown* v. *United States* (1973) 411 U.S. 223, 231-232 [93 S.Ct. 1565, 1570, 36 L.Ed.2d 208] [admission of out-of-court statement of a nontestifying codefendant in violation of the Sixth Amendment confrontation clause]; *Milton* v. *Wainwright* (1972) 407 U.S. 371, 377-378 [92 S.Ct. 2174, 2177-2178, 33 L.Ed.2d 1] [confession obtained *in violation of Massiah* v. *United States* (1964) 377 U.S. 201 [84 S.Ct. 1199, 12 L.Ed.2d 246]]; *Chambers* v. *Maroney* (1970) 399 U.S. 42, 52-53 [90 S.Ct. 1975, 1981-1982, 26 L.Ed.2d 419] [admission of evidence obtained in violation of the Fourth Amendment]; *Coleman* v. *Alabama* (1970) 399 U.S. 1, 10-11 [90 S.Ct. 1999, 2003-2005, 26 L.Ed.2d 387] [denial of counsel at a preliminary hearing in violation of the Sixth Amendment counsel clause].)

In only a few cases has the Supreme Court found a constitutional violation which is not subject to harmless error analysis. (See, e.g., *Sullivan* v. *Louisiana* (1993) 508 U.S. 275, 281 [113 S.Ct. 2078, 2082-2083, 124 L.Ed.2d 182] [constitutionally deficient reasonable doubt instruction]; *Vasquez* v. *Hillery* (1986) 474 U.S. 254, 263-264 [106 S.Ct. 617, 623-624, 88 L.Ed.2d 598] [unlawful exclusion of members of the defendant's race from a grand jury]; *Waller* v. *Georgia* (1984) 467 U.S. 39, 49, fn. 9 [104 S.Ct. 2210, 2217, 81 L.Ed.2d 31] [right to public trial]; *McKaskle* v. *Wiggins* (1984) 465 U.S. 168, 177-178 [104 S.Ct. 944, 950-951, 79 L.Ed.2d 122] [right to self-representation at trial]; *Gideon* v. *Wainwright* (1963) 372 U.S. 335, 345 [83 S.Ct. 792, 797, 9 L.Ed.2d 799] [complete denial of right to counsel]; *Tumey* v. *Ohio* (1927) 273 U.S. 510, 535 [47 S.Ct. 437, 445, 71 L.Ed. 749] [adjudication by biased judge].)

█ In *Arizona* v. *Fulminante, supra,* 499 U.S. 279, the court reviewed its prior decisions and articulated a basis for distinguishing between constitutional errors which do not automatically require reversal and those which do.

The court characterized the former as "trial errors" which occur during the presentation of the case to the jury. (499 U.S. at p. 307 [111 S.Ct. at pp. 1263-1264].) An error always requiring reversal, on the other hand, is a "structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." (*Id.* at p. 310 [111 S.Ct. at p. 1265].)

In *Sullivan* v. *Louisiana, supra,* 508 U.S. 275, the high court further illuminated the process of reviewing constitutional errors when it held that giving a constitutionally deficient reasonable doubt instruction is reversible error per se. The court reasoned that because of the deficient instruction, there was no jury verdict of guilty beyond a reasonable doubt, as required by the Sixth Amendment. (508 U.S. at pp. 278-281 [113 S.Ct. at pp. 2080-2083].) In arriving at this outcome, the court discussed the *Chapman* harmless error process, stating: "Consistent with the jury-trial guarantee, the question it instructs the reviewing court to consider is not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand. See *Chapman, supra,* [386 U.S.] at 24 (analyzing effect of error on 'verdict obtained'). Harmless-error review looks, we have said, to the basis on which 'the jury *actually rested* its verdict.' *Yates* v. *Evatt,* 500 U.S. 391, 404 [111 S.Ct. 1884, 1893, 114 L.Ed.2d 432] (1991) (emphasis added). The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error. That must be so, because to hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the findings to support that verdict might be—would violate the jury-trial guarantee. [Citations.]" (*Sullivan* v. *Louisiana, supra,* 508 U.S. at pp. 279-280 [113 S.Ct. at pp. 2081-2082].)

*Sullivan* went on to explain jury instruction error on reasonable doubt was quite different from a jury instruction error of erecting a presumption regarding an element of an offense. (508 U.S. at pp. 280-281 [113 S.Ct. at pp. 2082-2083].) For example, the presumption that a person intends the ordinary consequences of his voluntary acts violates the Fourteenth Amendment because it may relieve the state of its burden of proving all elements of an offense. But "[w]hen a jury is instructed to presume malice from predicate facts, it still must find the existence of those facts beyond a reasonable doubt." (*Rose* v. *Clark, supra,* 478 U.S. at p. 580 [106 S.Ct. at p. 3107].) And when the latter facts "are so closely related to the ultimate fact to be presumed that no rational jury could find those facts without also finding that ultimate fact, making those findings is functionally equivalent to finding

the element required to be presumed." (*Carella* v. *California, supra,* 491 U.S. at p. 271 [109 S.Ct. at pp. 2423-2424].) A reviewing court may then be able to conclude that the presumption played no significant role in the finding of guilt beyond a reasonable doubt. "But the essential connection to a 'beyond a reasonable doubt' factual finding cannot be made where the instructional error consists of a misdescription of the burden of proof, which vitiates *all* the jury's findings." (*Sullivan* v. *Louisiana, supra,* 508 U.S. at p. 281 [113 S.Ct. at p. 2082].) This leads a reviewing court to pure speculation as to what a jury would have done, and the wrong entity then judges the defendant guilty. (*Ibid.*)

The *Sullivan* court also analyzed the question under the *Arizona* v. *Fulminante* standard, distinguishing between " 'structural defects in the constitution of the trial mechanism, which defy analysis by "harmless-error" error standards,' " and trial errors which occur " 'during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented.' " (*Sullivan* v. *Louisiana, supra,* 508 U.S. at p. 281 [113 S.Ct. at pp. 2082-2083], quoting from *Arizona* v. *Fulminante, supra,* 499 U.S. at pp. 307-309 [111 S.Ct. at pp. 1263-1265].) Denial of the right to a jury verdict of guilt beyond a reasonable doubt is an error that fits within the former category. (*Sullivan* v. *Louisiana, supra,* at p. 281 [113 S.Ct. at pp. 2082-2083].)

In summary, although most constitutional errors have been held amenable to harmless error analysis, some will always invalidate a conviction. (*Sullivan* v. *Louisiana, supra,* 508 U.S. at p. 279 [113 S.Ct. at pp. 2081-2082].) The question before us is to which category *Carter* error belongs.

### D.   *Carter error is subject to harmless error treatment*

■   In addressing this question, we first inquire whether, as in *Sullivan* v. *Louisiana, supra,* 508 U.S. 275, the error necessarily deprived appellant of his Fifth and Sixth Amendment rights to a verdict based on the beyond-a-reasonable-doubt standard. In *Sullivan* the court gave an instruction equating reasonable doubt with "grave uncertainty" and an "actual substantial doubt," and further stated that what was required was a "moral certainty" the defendant was guilty. (*Sullivan* v. *Louisiana, supra,* 508 U.S. at p. 277 [113 S.Ct. at p. 2080], citing *Cage* v. *Louisiana* (1990) 498 U.S. 39 [111 S.Ct. 328, 112 L.Ed.2d 339] disapproved on other grounds in *Estelle* v. *McGuire, supra,* 502 U.S. at p. 72, fn. 4 [112 S.Ct. at p. 482].) Because of the deficient instruction, the jury did not return a verdict on the beyond-a-reasonable-doubt standard, so that the entire premise of a harmless error review was absent. (*Sullivan* v. *Louisiana, supra,* at p. 280 [113 S.Ct. at p. 2082]; see

also *People* v. *Kobrin* (1995) 11 Cal.4th 416, 429 [45 Cal.Rptr.2d 895, 903 P.2d 1027] [instruction in perjury case removed materiality element from jury's consideration]; *People* v. *Cummings* (1993) 4 Cal.4th 1233, 1316 [18 Cal.Rptr.2d 796, 850 P.2d 1] [harmless error analysis not applicable to instructional error which withdraws from jury consideration substantially all of the elements of an offense].)

Here the jury was fully instructed on the elements of the offenses with which appellant was charged and the proper standard of proof required for a guilty verdict.[5] Thus, what the Supreme Court referred to as the *object* of harmless error analysis, found lacking in *Sullivan*, is present here.

We next turn to the *Fulminante* formulation to determine whether *Carter* error is a "structural defect[] in the constitution of the trial mechanism, which def[ies] analysis by 'harmless-error' standards." (*Arizona* v. *Fulminante, supra,* 499 U.S. at p. 309 [111 S.Ct. at p. 1265].) We conclude it is not.

Appellant received a full opportunity to put on evidence and make argument to support his claim of innocence. He was tried by a fairly selected, impartial jury and an impartial judge. He was adequately represented by counsel. Aside from the challenged instruction, the jury was clearly instructed that it had to find the defendant guilty beyond a reasonable doubt as to every element. "Placed in context, the erroneous . . . instruction does not compare with the kinds of errors that automatically require reversal of an otherwise valid conviction." (*Rose* v. *Clark, supra,* 478 U.S. at p. 579 [106 S.Ct. at p. 3107].)

Perhaps the most persuasive reason for reaching the conclusion we do is that the constitutional privilege against compulsory self-incrimination which was infringed upon here is the same privilege involved in the very case in which the Supreme Court announced its harmless error standard. (*Chapman* v. *California, supra,* 386 U.S. 18.) In *Chapman* the prosecutor expressly commented upon the defendants' failure to testify and drew inferences of their guilt therefrom. (*Id.* at p. 19 [87 S.Ct. at pp. 825-826].) In addition, the trial court instructed the jury it was entitled to draw inferences unfavorable to the defendants from their failure to deny or explain evidence involving facts within their knowledge. (*Id.,* at fn. 2.) Nevertheless, the Supreme Court declined to find the error reversible per se. We fail to see how the lack of

---

[5]In the unpublished portion of this opinion we reject appellant's contention the reasonable doubt instruction given (CALJIC No. 2.90 (1994 rev.)) deprived him of due process by failing to specify the degree of certainty required for proof beyond a reasonable doubt. (See *People* v. *Light* (1996) 44 Cal.App.4th 879 [52 Cal.Rptr.2d 218].)

instructions telling the jury not to draw such inferences should be treated differently. Whatever difference there may be between the error in *Chapman* and that here is one of degree, not of kind. (See *Shults* v. *Whitley* (9th Cir. 1992) 982 F.2d 361, 362 [*Carter* is not retroactive on collateral review because "reasonable jurists" could conclude adverse comment by the prosecutor or judge on defendant's failure to testify makes assertion of Fifth Amendment privilege "costly" in a manner and to a degree that refusal to give a requested "no adverse inference" instruction does not].)

The premise on which *Carter* error rests is that absent explanatory instructions, the jury may "draw from the defendant's silence broad inferences of guilt." (*Carter* v. *Kentucky, supra*, 450 U.S. at p. 301 [101 S.Ct. at p. 1119].) But whether the jury was likely to have drawn such inferences, and to what extent, may differ from case to case depending upon the nature of the charges and the type and quality of evidence presented on the critical issues.

The likelihood of improper inferences seems greatest when the defendant presumably has knowledge of facts not otherwise shown in the evidence. For example, if the principal contested issue is identity, the jury may be very likely to draw inferences adverse to the defendant from his failure to testify as to his whereabouts during the relevant time period. Even in such a case, however, a reviewing court may be able to find the error harmless beyond reasonable doubt if the evidence of guilt is compelling. (See *United States* v. *Hasting, supra*, 461 U.S. at pp. 510-512 [103 S.Ct. at pp. 1981-1982] [prosecutor's comment on defendant's silence harmless in light of victims' evidence negating doubt as to identification].) As noted by the Supreme Court, the effect of adverse inferences drawn by the jury can "be quantitatively assessed in the context of other evidence presented" to determine whether the error in allowing them was harmless beyond a reasonable doubt. (*Arizona* v. *Fulminante, supra*, 499 U.S. at p. 308 [111 S.Ct. at p. 1264].)

In other cases, the probability the jury may draw such adverse inferences may diminish substantially or disappear. If the only contested issue turns on facts not obviously within the defendant's knowledge, his silence is not likely to be used against him, even without appropriate jury instructions.

For these reasons, we hold that *Carter* error may be subject to harmless error analysis on a case-to-case basis.

2.-4.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 186.

## DISPOSITION

Affirmed.

Dibiaso, Acting P. J., and Wiseman, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 17, 1998.