Filed 6/13/16  P. v. Topper CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JASON EDWARD TOPPER,<br><br>    Defendant and Appellant. | B260569<br><br>(Los Angeles County<br>Super. Ct. No. BA391063) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, William N. Sterling, Judge.  Affirmed.

        Lise M. Breakey, under appointment by the Court of Appeal, for Defendant and Appellant.

        Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell and Nathan Guttman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

Defendant Jason Edward Topper was convicted by a jury of second degree robbery. At trial, defendant elected not to testify. Although the trial court provided an extensive explanation about a criminal defendant's right to remain silent during jury selection, the court did not instruct the jury about the right to remain silent during final instructions.

In *Carter v. Kentucky* (1981) 450 U.S. 288, 305 [101 S.Ct. 1112, 67 L.Ed.2d 241] (*Carter*), the U.S. Supreme Court held that "a state trial judge has the constitutional obligation, upon proper request, to minimize the danger that the jury will give evidentiary weight to a defendant's failure to testify" by instructing the jury about a defendant's right to remain silent. The failure to instruct the jury as requested when a defendant elects not to testify constitutes "*Carter* error." (*People v. Evans* (1998) 62 Cal.App.4th 186, 190.)

The sole issue on appeal is whether the trial court committed *Carter* error, and if so, whether the error is reversible. We find the trial court did not err because defendant did not request the instruction; and we further find that, even if there were any error, it would be harmless beyond a reasonable doubt. We therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    THE ROBBERY AND ARREST

At about 9:30 p.m. on November 17, 2011, Angela Mattson was talking on her cell phone while walking to her car near Rosewood and Sierra Bonita Avenues in Los Angeles. She saw a man approaching her, felt something was wrong, and began to scream. As he got close to her, she saw he had a gun.

The man stopped about a foot from Mattson, and the area was illuminated by street lamps, so she could see his face. She thought he resembled a friend named "Zach." The man was about 5 feet 10 inches tall and weighed 160 pounds. He was wearing dark pants and a sweatshirt with the hood up. Mattson did not recall seeing tattoos on his face, neck, or left hand, nor did she remember seeing any injuries to his left hand. The man was holding the gun in his right hand. The man directed Mattson to put her belongings—including her iPhone, necklace, and keys—in her purse. She complied, and the man ran

2

away with the purse. Mattson's wallet was also inside the purse and contained her driver's license, credit cards, and approximately $100.

After the robber fled, an individual from a nearby apartment building called 911. Mattson told the 911 operator that a white man with facial hair and wearing a black hoodie had robbed her at gunpoint and had taken her possessions. Los Angeles Police Officer Alonzo Howell and his partner were dispatched to meet Mattson. When they arrived, Mattson gave them the same description she had given the 911 operator.[1] By remotely accessing the tracking device on Mattson's stolen iPhone, the police were then able to track her iPhone to an apartment building located five miles from where the robbery had occurred.

At about 10:10 p.m. (40 minutes after the robbery), Los Angeles Police Sergeant Brian Churchill went to that apartment building after hearing a radio call about the robbery, as he was only a few blocks away. Before arriving, Sergeant Churchill had spoken to Officer Alonzo Howell by radio and received a description of the robbery suspect. About 10 minutes after Sergeant Churchill and other officers arrived, defendant came out of apartment B. Officer Dennis Shaw detained defendant, patted him down for weapons, and had him taken away for a more thorough search.

Dominique Taylor then came out of apartment B. When she saw the officers, she went back inside. The officers entered the apartment and found the following items: a black replica gun in Taylor's purse; a wallet in a dresser drawer that contained both Taylor's and Mattson's identification cards; and a plastic bag in the living room that contained a purse, wallet, and necklace that Mattson later identified as hers. After a more thorough search of defendant, the police found Mattson's iPhone and $104 in defendant's pockets.

---

[1]     Officer Howell originally wrote in his report that Mattson described the robber as Hispanic and later revised it to state that she described the robber as White. Mattson denied telling the police that the robber was Hispanic. At the time of trial, Officer Howell could not remember whether Mattson said the robber was Hispanic or White.

Officers drove Mattson to the apartment building to see if she could make an identification. They told her she would be viewing the person who had her cell phone, but it was not necessarily the man who robbed her. Upon seeing defendant, Mattson said she was "90 percent positive" he was the robber. Once again, she concluded that he resembled her friend Zach. Mattson subsequently identified defendant as the robber at the preliminary hearing.

## B.  THE IDENTITY DEFENSE AT TRIAL

At trial, the defense attempted to raise reasonable doubt about whether defendant committed the robbery.

The defense first challenged Mattson's in-court identification, which was equivocal. She was not positive that defendant was the man who had robbed her, explaining that "it could have been someone who looked a lot like him." She continued to believe, however, that defendant resembled her friend Zach.

The defense also attempted to exploit perceived inconsistencies in Mattson's prior identifications. Mattson said the robber weighed 160 to 180 pounds; defendant weighed 149 pounds. Mattson said the robber wore dark pants and a dark hoodie; defendant was wearing blue jeans and a gray t-shirt when arrested an hour after the robbery (and the police did not find matching clothing in the apartment). In addition, Mattson could not recall whether the robber's hand was injured, yet defendant had a visible injury on his left hand.

## C.  THE JURY INSTRUCTIONS, VERDICT, POST-TRIAL MOTION, AND SENTENCE

When instructing the jury on the applicable law, the trial court used the CALCRIM instructions. Even though defendant did not testify, the trial court did not give CALCRIM No. 355. CALCRIM No. 355 states: "A defendant has an absolute constitutional right not to testify. He or she may rely on the state of the evidence and argue that the People have failed to prove the charges beyond a reasonable doubt. Do not consider, for any reason at all, the fact that the defendant did not testify. Do not discuss that fact during your deliberations or let it influence your decision in any way." Defendant did not request this instruction.

4

The jury deliberated for less than two hours before finding defendant guilty of second degree robbery (Pen. Code, § 211). After the verdict but before sentencing, the trial court recognized that it had not given CALCRIM No. 355 despite its intention to do so. The court informed the parties of this omission, explaining how it occurred: "I took the set of instructions from the last trial I did and just missed that that defendant had testified and I hadn't given it. Neither lawyer caught it. It is my impression, first impression, that because I went into the right to remain silent so extensively with the jury during voir dire and then again in front of them with the new panel for alternates, it appears to me that under the *Chapman* standard, [*Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 17 L.Ed.2d 705]] this would be harmless beyond a reasonable doubt. But the defense certainly has the right to make a motion for new trial and argue to the contrary. I just wanted to advise both counsel at this point and we'll take it from there."

Defendant filed a motion for a new trial asserting that the omission of the instruction violated his right to due process. The prosecution opposed the motion on the ground any error was harmless beyond a reasonable doubt due to the trial court's introductory instructions to the potential jurors. The trial court denied the motion on the grounds that it had no sua sponte duty to give the instruction and that any error was harmless in light of its extensive explanation of the underlying constitutional principle during voir dire. The trial court concluded that it had explained the principle is "in such great detail with the jurors" during voir dire that "essentially [the jury was] instructed, just not instructed at the end of the trial."

The trial court sentenced defendant to 21 years in state prison after he admitted he previously had suffered two prior serious felony convictions (Pen. Code, §§ 667, subds. (a)(1), (b)-(i), 1170.12) and served prior prison terms (*id*., § 667.5, subd. (b)). The trial court struck one of the prior serious felony convictions for purposes of three-strike sentencing (*id*., § 1385) and sentenced defendant to the upper term of five years, doubled to 10 years as a second strike offender. The court then imposed an additional 11 years for

5

the enhancements—i.e.,10 years for the two prior serious felony convictions (*id*., § 667, subd. (a)(1)) and one year for having served a prior prison term (*id*., § 667.5, subd. (b)).

## DISCUSSION

Defendant contends that the trial court erred in denying his motion for a new trial because the omission of CALCRIM No. 355 from the jury instructions deprived him of his right to due process of law. We conclude that the trial court did not err because defendant failed to request that instruction. We further conclude that even if there were error, it would be harmless.

### A. STANDARD OF REVIEW

A defendant may move for a new trial "[w]hen the court has misdirected the jury in a matter of law . . . ." (Pen. Code, § 1181, subd. 5.) Misdirection includes instructional error. (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 579.) Before the trial court may grant a new trial motion, it must determine "both that error occurred, and that the error prevented the complaining party from receiving a fair trial. [Citation.]" (*People v. Ault* (2004) 33 Cal.4th 1250, 1262.) While we generally review a trial court's ruling on a motion for a new trial for abuse of discretion (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1108), a claim of instructional error is "predominantly legal" (*People v. Waidla* (2000) 22 Cal.4th 690, 733). We therefore examine de novo the questions whether instructional error occurred, and if so whether it deprived the defendant of a fair trial. (*Ibid*.; accord, *Ault*, *supra*, at pp. 1261-1262.)

### B. THE TRIAL COURT COMMITTED NO ERROR

Upon a defendant's request, a trial court must "instruct the jury not to draw an adverse inference from the defendant's failure to take the stand." (*People v. Evans*, *supra*, 62 Cal.App.4th at p. 190; accord, *Carter*, *supra*, 450 U.S. at pp. 300, 305.) Absent a defendant's request, a trial court has no duty to give such an instruction. (*People v. Lewis* (1990) 50 Cal.3d 262, 282 [rejecting the defendant's claim of error based on "the well-established California rule that instructions against adverse inferences from a defendant's failure to testify need only be given upon his request"].) Here, defendant

6

failed to request CALCRIM No. 355, and thus the trial court did not commit error by omitting it.

On appeal, defendant contends that we should overlook his counsel's failure to request the instruction because the trial court had suggested during jury selection that it would give CALCRIM No. 355. He asserts: "Defense counsel did not ask for the instruction because it was transparently unnecessary to make the request—because she relied upon the trial court's statement that the instruction would be given." However, defendant makes this assertion without providing any factual or legal support. He points to nothing in the record that would suggest his counsel had relied on the trial court's statement; in fact, his counsel did not assert any such reliance when moving for a new trial.[2] Nor does defendant cite any legal authority suggesting that a party is relieved of his or her obligation to request an instruction whenever a trial court previously has expressed its intent to give an instruction. (See *Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1457 [claim of error forfeited for failing to support argument with legal authority].) We therefore find that the trial court did not commit *Carter* error.

## C. ANY ERROR WAS HARMLESS

Even if we were to find error, we would conclude that it was harmless beyond a reasonable doubt given the thorough treatment of the constitutional right to remain silent during jury selection and the compelling evidence of guilt.[3]

---

[2] In *People v. Holt* (1997) 15 Cal.4th 619, 687, the court noted that "a defendant may have a sound tactical reason for preferring that the instruction not be given"— namely, to avoid drawing attention to the failure to testify. Defendant claims that his counsel "clearly had no tactical reason for the omission," as demonstrated by her failure to object during jury selection to the trial court's stated intention to give the instruction. Defense counsel, however, was under no obligation to object to an anticipated jury instruction during voir dire. It is therefore not reasonable to infer from this failure to object that counsel already had made a strategic choice to request CALCRIM No. 355— even before the final decision of whether defendant would testify.

[3] Citing dicta in Judge Gould's concurring opinion in *United States v. Soto* (9th Cir. 2008) 519 F.3d 927, 936, fn. 1, defendant asserts that "it is questionable whether remarks made during voir dire or before the jury is sworn in, rather than at the close of the case,

7

During jury selection, the prospective jurors were instructed thoroughly on the applicable constitutional principles, including the presumption of innocence, the prosecution's burden of proof, and defendant's right to remain silent. Explaining the right to remain silent, the trial court stated: "Because Mr. Topper, just like . . . if you were or I were there or anybody else who's sitting where he's sitting—because he's presumed to be innocent and because he does not have to prove [that] he didn't do it, he's got a right not to say anything because he does not have to prove anything. . . . So because of that, he does not have to say anything. The People still have to prove that he did do it if you're going to vote guilty. So if we get to that point and he chooses not to testify or put on evidence, at that point, I'll instruct you that you can't consider it. You can't go back in the jury room and think, I wonder why he didn't testify or I wonder if he didn't testify because he's hiding something or anything like that. You disregard that. You put it to one side. You don't think about the fact that he didn't testify or put on evidence in any way. And you look at the evidence you got. Because he's presumed to be innocent. And you only vote guilty if the evidence that you did get proves him guilty and proves him guilty beyond a reasonable doubt."

The trial court reiterated these principles in its preliminary instructions to the potential jurors , and in its introductory remarks to a new panel of potential alternate jurors. And in the final instructions several days later, the court repeated its instructions on the defendant's presumption of innocence and the prosecution's burden of proof. The jurors were thus made aware that defendant had a constitutional right to remain silent and that they could not draw an adverse inference against him if he elected to exercise that right.

---

can render *Carter* error harmless." Whether Judge Gould intended to suggest that statements made during jury selection are irrelevant to the harmless error analysis is unclear. What is clear is that Judge Gould and the rest of the *Soto* panel found any *Carter* error harmless based on the strength of the evidence in that case. Here, we would find any error to be harmless for similar reasons without consideration of the trial court's voir dire remarks.

8

Moreover, the prosecution's evidence against defendant was overwhelming. Identity was the only issue at trial, and the defense sought to discredit the identification evidence based on certain discrepancies (e.g., Mattson's failure to notice details about defendant's left hand and the inaccuracies in her clothing description). However, Mattson identified defendant soon after the crime, stating that she was "90 percent positive" that he was the perpetrator. The physical evidence strongly corroborated her identification: less than an hour after the robbery, and only five miles away from where it occurred, the police found him with Mattson's iPhone and a similar amount of cash that had been taken from her. The police also found the other stolen items in an apartment he had just left and an ersatz gun in the purse of a woman he knew. (See *People v. O'Dell* (2007) 153 Cal.App.4th 1569, 1574 [possession of recently stolen property raises a strong inference of guilt of theft]; CALCRIM No. 376 [Possession of Recently Stolen Property as Evidence of a Crime].)[4]

In light of the strength of the evidence against defendant, had the trial court erred in failing to give CALCRIM No. 355, any error would have been harmless beyond a reasonable doubt.

---

[4]    Defendant was convicted in this case following a previous mistrial because the jury was unable to reach a verdict (11-1 in favor of conviction). Defendant argues that the instructional omission in his retrial was prejudicial as demonstrated by the fact that the first jury did not convict him when given CALCRIM No. 355. Based on our review of the record, we do not find this argument persuasive. Moreover, it is purely speculative to suggest that the one hold-out juror in the first trial was influenced by CALCRIM No. 355.

## **DISPOSITION**

The judgment is affirmed.


BLUMENFELD, J.[*]


We concur:


ZELON, Acting P. J.


SEGAL, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.