UNITED STATES of America,
Plaintiff-Appellee,

v.

Kenneth EILAND, Defendant-Appellant.

No. 83–2439
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Sept. 4, 1984.

Dexter M. Patterson, Woodlands, Tex., for defendant-appellant.

Daniel K. Hedges, U.S. Atty., James R. Gough, Susan L. Yarbrough, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, GEE, and JOLLY, Circuit Judges.

CLARK, Chief Judge:

Kenneth Eiland appeals his jury conviction for knowingly receiving stolen money belonging to the United States government. We reverse because the trial judge refused the defendant's request to instruct the jury on his failure to testify.

## I

In 1981 and 1982 Paul David Young, an inmate of the Texas Department of Corrections (TDC), prepared and signed approximately fifty income tax returns in the names of other prisoners, including two in Kenneth Eiland's name. Young had attended a tax preparation school and possessed employer identification numbers for about fifteen companies which he used to prepare bogus W–2 forms attached to the returns. The government alleges that Eiland supplied Young with the names, social security numbers, and non-prison addresses of other prisoners necessary for this scheme. The plan produced approximately $12,000 in improper refunds to TDC inmates.

One return which Young completed in Eiland's name claimed a refund of $483.09. A check in that amount was issued to Eiland by the Internal Revenue Service and mailed to Eiland's mother, who endorsed the check and deposited it in her account. She then sent a money order in the same amount, $483.09, to Eiland's inmate account at the TDC.

In a seventy-count indictment filed on June 1, 1982, Eiland, along with fourteen other TDC inmates, was charged under 18 U.S.C. §§ 2, 641 with participating in a scheme to receive, retain, and convert to his own use stolen money belonging to the United States. Eiland's trial focused solely on the issue of his knowledge of the source of the $483.09. Young's testimony was the only direct evidence on this issue. Under examination Young equivocated as to whether Eiland knew of the false returns and whether he had indeed supplied the information on other prisoners. The government then confronted Young with the transcript of his interview with two IRS agents in May of 1982. The transcript contained Young's definite statements that Eiland knew of the filing of the false return and had provided the personal information used therein, as well as the information on several prisoners for other fraudulent returns. At trial Young claimed that he had been mistaken in many of his 1982 statements because he had been under great emotional stress at the time of the interview.

Eiland's defense consisted of an attack on Young's credibility, especially in the 1982 statements. Eiland's attorney argued that Young had acted independently to obtain this money for the other prisoners, hoping they would use it to pay for his "writ-writing" services.

At the close of trial, the district court properly instructed the jury on the elements of the crime charged and the burden of proof, but omitted any charge on the defendant's failure to testify. The court then retired the jury, but instructed them not to begin deliberations until counsel had an opportunity to object to the instructions. Eiland's counsel objected to the omission of an instruction on his failure to testify, but was overruled.

After several hours of deliberation the jury notified the court that they were hopelessly deadlocked. The judge then gave a supplemental instruction telling the jury that government money obtained through the scheme described in the evidence was stolen money and focusing their attention solely on the issue of whether Eiland knew

the money was stolen when he received and retained it.

After several more hours of deliberation the jury reached a guilty verdict. The next day Eiland was sentenced to ten years in prison to be served consecutively to his state sentence.

## II

Eiland contends (1) the evidence is insufficient to sustain his conviction, (2) the prosecutor impermissibly commented on his failure to testify, (3) the district court erred in the initial instructions to the jury by refusing the defendant's request for an instruction on his failure to testify, (4) the supplemental instruction was erroneous because the judge commented on the weight of the evidence and failed to make the supplemental charge complete, and (5) the court erred in refusing to delay sentencing.

Rather than filing a regular brief, the government confessed error in the refusal to instruct on the defendant's failure to testify, at the same time stating that Eiland's other contentions were without merit. Because of the double jeopardy implications and the possibility that these errors might recur on retrial, we required full briefing from the government. This brief advanced the following arguments: (1) there was overwhelming evidence of Eiland's guilt; (2) the court's refusal to give the failure to testify instruction was not error because it was not properly requested, and if the refusal was error, it was harmless in light of the overwhelming evidence and the instructions given on the burden of proof; (3) the supplemental charge, which was not objected to at trial, was fair; (4) the prosecutor did not comment on the defendant's failure to testify; and (5) the court properly sentenced defendant.

## A

■ In determining whether the evidence is sufficient to support Eiland's conviction, we examine the evidence in the light most favorable to the Government and will sustain the jury verdict if supported by substantial evidence. *See Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). We have stated: "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell*, 678 F.2d 547, 549 (5th Cir.1982) (en banc).

■ The evidence at trial clearly supports Eiland's conviction. In his 1982 statement to the IRS agents, Young had stated that Eiland took an active part in the plan to file the false return. Although his testimony at trial was more equivocal, the jury reasonably could have found the 1982 statements to be more credible. Such a conclusion would be bolstered by the testimony of an IRS investigator that Eiland, when questioned about where his mother got the $483.09 for the money order, responded that he knew where the money had come from, but would not discuss it without an attorney. A reasonable juror could have concluded, upon this evidence, that Eiland wilfully received money that he knew had been stolen from the United States.

## B

■ We find no merit in Eiland's argument that a statement by the prosecutor during closing argument requires reversal. The context of the prosecutor's remark is as follows:

You had witnesses all along who made this case before Paul Young took the stand. *However, if you are to believe the defense attorney and his client, Paul Young told you what Mr. Eiland's motive was.* If in fact Paul Young, and we don't represent one way or the other, was doing so-called inmate legal work or jailhouse legal work for the other inmates and had to get paid for it and of course wanted money and devised a way

to get the inmate's money, that is it. That is motive.

According to the defense attorney, the motive for Mr. Eiland getting $483.09 in his trust fund account is to pay Mr. Young. May or may not be true. There has been no evidence in this case to indicate Mr. Young received any money. As a matter of fact, he said he did not get any money.

... We have got motive here but it really isn't good motive.

Eiland urges that the highlighted statement constitutes a comment on his failure to testify. He did not object to the remark when made; thus, we are precluded from reviewing this claim unless it constitutes "plain error." Fed.R.Crim.P. 52(b); *see United States v. Okenfuss*, 632 F.2d 483, 485 (5th Cir.1980).

█ It is well-settled that the government may not comment on a defendant's silence. *United States v. Bright*, 630 F.2d 804, 825 (5th Cir.1980). Such comment is reversible error when either the prosecutor's intent was to comment on the defendant's failure to testify or the character of the remark was such that the jury would "naturally and necessarily" construe it as a comment on the defendant's silence. *United States v. Chisem*, 667 F.2d 1192, 1195 (5th Cir.1982).

█ Here, the prosecutor clearly intended to attack the defense's argument that Young had a motive to file these returns without Eiland's knowledge. The jury could not naturally or necessarily have construed the statement as a comment on Eiland's silence. *See Chisem*, 667 F.2d at 1195.

### C

█ Eiland is correct in his assertion that a trial judge, if properly requested to

do so, must instruct the jury against drawing adverse inferences from the defendant's failure to testify. *See Carter v. Kentucky*, 450 U.S. 288, 300, 101 S.Ct. 1112, 1119, 67 L.Ed.2d 241 (1981) (instruction required by Fifth Amendment); *Bruno v. United States*, 308 U.S. 287, 293, 60 S.Ct. 198, 200, 84 L.Ed. 257 (1939) (instruction required by 18 U.S.C. § 3481). The failure to so instruct the jury cannot be dismissed as "technical error." *Bruno*, 308 U.S. at 293–94, 60 S.Ct. at 200.

█ His objection[1] to the omission of this charge had the same effect as a valid request for the instruction. We have cautioned against blindly applying the procedures for requesting or objecting instructions so as to create a "trap for the unwary." *United States v. Davis*, 583 F.2d 190, 195 (5th Cir.1978). Eiland's objection and the court's response, noted above, clearly preserved the defendant's constitutional right to an instruction on his failure to testify.

█ The objection was timely under Rule 30 Fed.R.Crim.P. *See United States v. Hollinger*, 553 F.2d 535, 545 n. 12 (7th Cir.1977); *Schaffer v. United States*, 221 F.2d 17, 22 (5th Cir.1955). Although the jury had been excused, they were told not to begin deliberations until further notice. The obvious purpose of this usual procedure is to afford both counsel the opportunity to raise objections to the charge.

█ The form of the objection was also proper under Rule 30. The subject of the objection and its grounds were identified with sufficient precision to give the district court a full understanding of its nature. *Henderson v. United States*, 425 F.2d 134, 144 (5th Cir.1970).

---

1. THE COURT: Defendant have any objections to the charge?
MR. LEVI: May I have a minute, Your Honor?
THE COURT: All right.
MR. LEVI: My only objection, Your Honor, would be that there is nothing included in here on failure to testify by the defendant.

THE COURT: Well, I told them several times that the defendant is not required to prove his innocence, doesn't have to produce any evidence at all. I think that is sufficient.
MR. LEVI: Yes, Sir.
THE COURT: So· [I will] overrule that objection.

■ By refusing to give the failure to testify instruction after defendant's objection, the court committed a constitutional error. It is established in this circuit that the "burden of proof" charge given in this case[2] is "significantly dissimilar" from a "failure to testify" instruction and does not satisfy the constitutional requirements. *United States v. Bain,* 596 F.2d 120, 121 (5th Cir.1979).

■ While there is merit to the government's argument that such error can sometimes be harmless, it was not harmless in this case. Our determination that the evidence was sufficient to support the conviction does not mean that the error can be considered harmless. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967) requires that the appellate court must find that a constitutional error such as this one was harmless beyond a reasonable doubt before affirmance can be justified. In reaching this conclusion, the error cannot be viewed in isolation. *Harryman v. Estelle,* 616 F.2d 870, 876 (5th Cir.) (en banc), *cert. denied,* 449 U.S. 860, 101 S.Ct. 161, 66 L.Ed.2d 76 (1980). Rather, the court must "decide whether, absent the so-determined unconstitutional effect, the evidence remains not only sufficient to support the verdict but so overwhelming as to establish the guilt of the accused beyond a reasonable doubt." *Id.*

■ The evidence adduced at trial and set out in Part I of this opinion does not meet this demanding standard. Young's contradictory testimony was the only direct evidence that Eiland knew the money was stolen. The conviction rested on the jury's inferences from circumstantial evidence and an appraisal of Young's credibility. The difficulty of this appraisal is reflected in the jury's initial determination that they were hung. In their subsequent deliberations they might well have interpreted Eiland's failure to testify as supporting Young's statements against him. We cannot say there is no reasonable doubt that the jury would have convicted Eiland even if the failure to testify instruction had been given. Therefore, the case must be remanded for a new trial.

**D**

■ Because Eiland failed to object to the supplemental charge at trial, he must now demonstrate that it was "so clearly erroneous as to result in a likelihood of a grave miscarriage of justice." *United States v. Varkonyi,* 645 F.2d 453, 460 (5th Cir.1981). Eiland's objections do not meet this standard.

■ There were no elements of coercion in the supplemental charge to the jury. It did differ from the original in that the judge told the jury that government money obtained through a scheme such as Young's was stolen money.[3] Although proof that the money was stolen is an essential element for a conviction under 18 U.S.C. §§ 2, 641, the instruction was not, in this case, an impermissible interference with the jury's role as factfinder. The defendant's own arguments were based on the assumption that Young had stolen the money. Because that fact is not in issue, the trial judge's comment, while better left unsaid, does not constitute plain error.

2. The indictment or formal charge against a defendant is not evidence of guilt. Indeed, the defendant is presumed by the law to be innocent. The law does not require a defendant to prove his innocence or produce any evidence at all. The Government has the burden of proving him guilty beyond a reasonable doubt, and if it fails to do so, then you must acquit him.

3. The pertinent part of this charge was:
Money obtained from the government in the fashion described in the evidence that has been presented to you under the law is stolen money. That is one instruction.
If you will read the indictment and you have it in there, you will see that this defendant is not charged with having stolen any money. He is charged with having knowingly and intentionally received or retained money that he knew had been stolen. He did not have to steal it. That is what you have to decide whether he knowingly and intentionally received or retained money that he knew had been stolen.

*United States v. Mancuso,* 423 F.2d 23, 29 (5th Cir.), *cert. denied,* 400 U.S. 839, 91 S.Ct. 79, 27 L.Ed.2d 73 (1970).

 For this same reason, the omission of the element of knowledge from the second charge does not make it fatally incomplete. The trial judge reiterated, although not at the same length, the instructions that the jury must find Eiland knowingly received or retained money stolen from the government. There is no requirement that a supplemental charge be a full repetition of the original, as long as the charge as a whole accurately reflects the legal issues, *United States v. Taylor,* 680 F.2d 378, 381 (5th Cir.1982), and is not confusing to the jury. *United States v. Petersen,* 513 F.2d 1133, 1136 (9th Cir. 1975).

### E

The court fully complied with Rule 32, Fed.R.Crim.P., in sentencing the defendant the day after his conviction. At that time the judge had received the presentence investigation prepared before Eiland's original sentencing by the Texas court and the updated supplement. The defense did not suggest there was any need to await additional information and never objected to the decision to sentence the day after conviction. Defendant's original request for delay was based on his desire to be sentenced at the same time as the others named in the same indictment, thereby postponing his return to state custody. That is not a valid ground for delay.

### III

For the reasons set forth above appellant's arguments are dismissed as meritless, except for his contention that the judge erred in refusing to instruct the jury on defendant's failure to testify. This refusal was constitutional error and so the case must be

**REVERSED and REMANDED.**