### UNITED STATES

v.

**Sergeant Michael N. KOCUR, FR473–86–5602, United States Air Force.**

### ACM 30065.

U.S. Air Force Court of Military Review.

Sentence Adjudged 20 May 1992.

Decided 23 April 1993.

however, is clearly at odds with his testimony at trial.

Appellate Counsel for the Appellant: Lieutenant Colonel Terry J. Woodhouse, Major Mary C. Yastishock, and Captain Robert I. Smith.

Appellate Counsel for the United States: Colonel Richard L. Purdon, Lieutenant Colonel Jeffery T. Infelise, Lieutenant Colonel Mark C. Ramsey, and Captain David C. Wesley.

Before LEONARD, JAMES, and JOHNSON, Appellate Military Judges.

### OPINION OF THE COURT

LEONARD, Senior Judge:

This case involves an unusual twist to the offense of receiving stolen property.[1] Is a person guilty of receiving stolen property when he receives money from another person's bank account that he knows contains money stolen from the U.S. Government? Under the circumstances of appellant's case, we affirm the finding of guilty to receiving stolen property.

### I. Facts.

Appellant and Sergeant Jason Field were close friends at Grand Forks AFB, North Dakota. Field served the Air Force as a contract maintenance specialist in the commercial services section of the Comptroller's office. He created a fictitious contract account in the commercial services automatic payments' system (COMSAPs), a computer system designed to generate vouchers and payments for Air Force accounts payable. Field named the fictitious account "Field Storage" and assigned the account a contract number, a contract award date, and other fictitious data needed for COMSAPs payments to the account. Field then caused COMSAPs to send contract payments for the fictitious contract account to a bank account at Metropolitan Federal, a financial institution in Fargo, North Dakota. The account to which the funds were deposited was Sgt. Field's personal bank account.

Beginning in November 1990, Field did six COMSAPs computer transactions for fictitious payments to Field Storage causing a total of $39,739.26 to be deposited to his personal account. After he confirmed each deposit, Field withdrew the stolen money from his account. Field knew appellant was experiencing financial difficulties due to the expenses of an acrimonious divorce and child custody litigation. On four or five occasions, Field gave appellant some of the money he withdrew from his account. Field gave appellant this money in the form of cash or money orders. The first time appellant received any money occurred after the second COMSAPs deposit when appellant accompanied Field to the bank to make a withdrawal. At that time, appellant did not know Field had stolen the money. On this occasion, after withdrawing the COMSAPs deposit from his account, Field gave appellant $1000.

By the time of Field's withdrawal of funds from the third COMSAPs deposit to his account, Field told appellant that he was stealing the money from the government. Despite this knowledge, appellant accepted another $1000 from Field after the withdrawal. When Field made subsequent COMSAPs deposits and withdrawals, appellant received $2000 (fourth transac-

[1]. Article 134, UCMJ, 10 U.S.C. § 934; MCM, Part IV, paragraph 106 (1984).

tion), $3800 (fifth transaction), and $1000 (sixth transaction). Appellant returned to Field $1000 of the $3800 he received from the fifth transaction. At various times, appellant made comments to Field both encouraging him to steal more money and, conversely, urging him to quit before he got caught. On some occasions, the appellant would accompany Field to the bank to withdraw funds stolen from the Air Force. In the stipulation of fact, appellant acknowledged that the money Field gave him belonged to the United States and he knew Field had stolen it from the United States. During his guilty plea inquiry, appellant also admitted that the money he received from Field was stolen from the United States.

The government charged appellant with receiving property stolen from the United States of an aggregate value of $8000. The military judge entered findings of guilt by exceptions and substitutions and found appellant guilty of receiving property stolen from the United States worth $6800. Field was separately prosecuted and convicted of the larcenies. *See United States v. Field*, 36 M.J. 697 (A.F.C.M.R.1992).

## II. Law and Analysis.

■■■■ One of the required elements of proof for the offense of wrongfully receiving stolen property is that the property received had been stolen. *Kirby v. United States*, 174 U.S. 47, 19 S.Ct. 574, 43 L.Ed. 890 (1899); MCM, Part IV, paragraph 106b(3) (1984). When we first reviewed this case we were concerned with whether the money Field withdrew from his account and gave appellant was property Field stole from the United States. After reviewing the briefs of the parties and the facts of the case, we conclude appellant did in fact receive property stolen from the United States.

■■■■ If a thief transforms tangible stolen property into another form of property and gives the new property to another, the person receiving the transformed property will not be guilty of wrongfully receiving stolen property. *See Commonwealth v. Brady*, 385 Pa.Super. 279, 288, 560 A.2d 802 (1989) (thief sold some stolen items and gave ac-

cused some of proceeds of sale); Wharton's Criminal Law, Volume IV, § 458 at p. 21 (14th ed. 1981).

On the other hand, when stolen money or a stolen check is deposited into a personal bank account or converted from one form of cash equivalent to another, the funds traceable to the funds originally stolen remain the property of the victim of the theft. For example, the Fifth Circuit Court of Appeals upheld a conviction for the federal offense of receiving stolen property under 18 U.S.C. § 641 although the funds received by the accused passed through the personal bank account of another. *United States v. Eiland*, 741 F.2d 738 (5th Cir. 1984). In *Eiland*, a prisoner prepared and signed 50 phony income tax returns in the names of other prisoners, including two in the accused's name. The accused's mother received an Internal Revenue Service refund check generated by one of the phony tax returns, deposited it into her account, and sent a money order to the accused in the amount of the refund. The *Eiland* Court found this evidence sufficient to sustain a conviction of the offense of knowingly receiving stolen property. 741 F.2d at 741.

A state court has also held the offense of receiving stolen property includes the receipt of cash by a defendant where the item originally stolen was a check. *See State v. Key*, 118 Ariz. 196, 575 P.2d 826 (1978). The *Key* court refused to adopt "an extremely restrictive interpretation of the requirement that the property received must be stolen" when dealing with schemes to defraud an individual of money. 575 P.2d at 830. The court reasoned that the theft of funds, represented by a stolen check, is incomplete until the object of the theft, U.S. currency, is obtained. *Id.* Thus, the cash converted from a stolen check is itself stolen property because it is the object of the theft. *Id.* at 829. The *Key* court based its decision, in part, on the reasoning of Judge Learned Hand in *United States v. Walker*, 176 F.2d 564 (2nd Cir.), *cert. denied*, 338 U.S. 891, 70 S.Ct. 239, 94 L.Ed. 547 (1949). *Walker* involved a prosecution under the National Stolen Property Act, 18

U.S.C. § 2314. The defendant had fraudulently obtained a check from his victim and converted the check into travelers checks which he transported across state lines. In affirming the conviction of transporting the travelers checks as stolen property, Judge Hand reasoned:

> We are by no means prepared to hold that, whenever any one fraudulently obtains the property of another, the proceeds are not also 'taken feloniously by fraud,' into whatever form he may convert them.
>
> \*   \*   \*   \*   \*   \*
>
> [I]t cannot be seriously argued that, if the accused defrauded his victim of bills of a large denomination and changed them into smaller bills, or vice versa, he would escape; and we recognize no distinction between such a case and the exchange of money from ordinary bank cheques into travelers cheques.

*Walker*, 176 F.2d at 566.

Justice Hand's reasoning in *Walker* is particularly applicable to modern day computerized banking where an accused can steal funds by causing a computer to issue a check to a fictitious account or by causing a computer to make an electronic transfer of funds to a fictitious account. In both cases, the object of the theft is funds or U.S. currency and not a distinct tangible item of property.

Though mere deposit into a bank account will not change the nature of stolen funds, a question of possible commingling of funds from different sources may arise. When the alleged recipient of stolen funds receives the funds from a personal bank where funds other than those stolen may have been deposited, the government may have a problem proving the funds received were part of the funds stolen. However, in appellant's case, appellant admitted and stipulated that the funds he received from Field were part of the funds Field stole from the United States. His plea and stipulation relieved the government of any responsibility to trace the funds received to those stolen from the government.[2] We find appellant's plea provident.

### III. Conclusion.

After examining the record of trial and briefs of the parties, we conclude that the findings and sentence are correct in law and fact, the sentence is appropriate, and no error prejudicial to the substantial rights of the accused occurred. Article 59(a), UCMJ, 10 U.S.C. § 859(a). Accordingly, the findings of guilty and sentence are

AFFIRMED.

Judges JAMES and JOHNSON concur.

---

**2.** The record is silent as to whether Field deposited any funds other than those stolen from the United States into his account with Metropolitan Federal. If appellant had entered a plea of not guilty and evidence had been introduced showing Field deposited other than stolen funds into the account, the government's case could have been much more difficult.