**RICKY PUA`A, Defendant-Appellant,**

**v.**

**AMERICAN SAMOA GOVERNMENT, Plaintiff-Appellee.**

High Court of American Samoa
Appellate Division

AP No. 07-97
(CR No. 29-96)

June 28, 1999

Before KRUSE, Chief Justice, GOODWIN*, Acting Associate Justice, MUNSON**, Acting Associate Justice, AFUOLA, Associate Judge, and ATIULAGI, Associate Judge.

Counsel: For Appellant, Brian M. Thompson
        For Appellee, John Cassell, Assistant Attorney General,

## OPINION

Per Curiam:

Appellant Ricky Pua`a ("Pua`a") appeals from his conviction on one count of possession of methamphetamine in violation of A.S.C.A. § 13.1022(a). We affirm the conviction.

### Factual and Procedural Background

Pua`a flew from Honolulu to Pago Pago on a first class ticket purchased with cash. On arrival, he was met by codefendant Poe Faumina who had previously obtained clearance to meet Pua`a inside customs. A customs officer discovered several hundred grams of methamphetamine concealed inside a black suitcase Pua`a had brought from Hawaii. The customs official testified he observed Pua`a repeatedly switching customs lines.

During the initial search of the suitcase, Poe claimed the packages containing the methamphetamine belonged to him. The suitcase, however, bore a tag with Pua`a's name. In addition, most of the clothes in the suitcase were later found to fit Pua`a but his fingerprints were not found on any of the items in the suitcase.

---

* Honorable Alfred T. Goodwin, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, serving by designation of the Secretary of Interior.
** Honorable Alex R. Munson, Chief Judge, United States District Court for the Northern Mariana Islands, serving by designation of the Secretary of Interior.

Pua`a provided a voluntary statement to customs officials. He reported that Pluto Faumuina, Poe's cousin, had asked him at the Honolulu airport to carry the suitcase to American Samoa. If Pua`a agreed, Pluto would give him $500 for his trouble. When searched at Pago Pago customs, however, Pua`a had only $5.29 on his person. Pua`a claimed not to know the suitcase contained illegal drugs but did acknowledge that he had heard Pluto was a big-time drug dealer. Pua`a also told officials that Pluto had told him that Poe would meet him at the baggage claim and take charge of the suitcase. Pluto was on the flight from Hawaii with Pua`a, but was not detained by authorities.

At trial, Poe claimed Pluto had told him only that one of his friends would be carrying a suitcase for him. He also claimed to have no knowledge the suitcase would contain illegal substances. Pua`a chose not to testify at trial, but his counsel adopted the story Pua`a had provided to customs officials.

## A. Severance

■ Pua`a first argues that the trial court erred in rejecting his motion to sever his trial from that of co-defendant Poe. The decision to order severance is left within the sound discretion of the trial court and is reviewed for an abuse of discretion. *See United States v. Vasquez-Veiasco,* 15 F.3d 833, 844 (9th Cir. 1994). "Defendants must meet a heavy burden to show such an abuse, and the trial judge's decision [to deny severance] will seldom be disturbed." *United States v. Tootick,* 952 F.2d 1078, 1080 (9th Cir. 1991). Although Pua`a advances a number of grounds for severance, we conclude the trial court did not abuse its discretion.

### 1. Mutually Antagonistic Defenses

■ Pua`a claims severance was necessary because he and Poe presented mutually exclusive defenses. Pua`a relies on *Tootick.* The court in *Tootick* noted, however, that "[m]utually exclusive defenses are said to exist when acquittal of one codefendant would necessarily call for the conviction of the other. *Tootick,* 952 F.2d at 1081. It is clear this trial did not present such a circumstance. Though both Pua`a and Poe tried to shift responsibility for the suitcase onto the other, their defenses were not mutually exclusive. A reasonable jury could have believed the stories of both defendants and laid the blame solely at the feet of Pluto.

The "touchstone" for determining whether severance is necessary in the context of mutually antagonistic defenses is whether "the jury is unable to assess the guilt or innocence of each defendant on an individual and independent basis." *Id.* at 1082. In this case, because the jury could have concluded both Poe and Pua`a were innocent, the jury was able to assess

the evidence against each defendant independently.

## 2. Poe's Counsel as a Second Prosecutor

■ Pua`a also argues that severance was necessary because Poe's counsel assumed the role of a "second prosecutor." *Cf. Tootick,* 952 F.2d at 1082. Pua`a has not identified, however, any excerpts from the record in which Poe's counsel acted as a second prosecutor. Pua`a cites only Poe's counsel's reminding the jury that (1) Pua`a, not Poe, was observed suspiciously switching customs lines at the airport; (2) Pua`a picked up the suitcase and had the keys to the suitcase; (3) the suitcase tags named Pua`a; and (4) Poe claimed Pluto had told him days before to pick up a suitcase accompanying Pua`a. Except for the last item, these facts were introduced by the government and were not even in dispute. As to the last item, the government was prohibited by Poe's right to silence, AM. SAMOA. CONST. ART. I, § 6, from calling Poe to testify. At a severed trial, however, the government could call Poe to the stand and introduce this evidence itself. Pua`a suffered no prejudice from this testimony being introduced by Poe's counsel instead of the government. *Cf. United States v. Breinig,* 70 F.3d 850 (6th Cir. 1995) (requiring severance where co-defendant introduced highly prejudicial evidence which would have been *inadmissible* against defendant in a severed trial).

In any case, the actions of Poe's counsel cited by Pua`a are a far cry from the potential abuses that concerned the *Tootick* court. *See Tootick,* 952 F.2d at 1082 ("Opening statements can become a forum in which gruesome and outlandish tales are told about the exclusive guilt of the 'other' defendant. The presentation of the codefendant's case becomes a separate forum in which the defendant is accused and tried. . . .").

## 3. Statements Redacted Under *Bruton*

■ Pua`a provided a voluntary statement to the authorities when the drugs were discovered. Among other things, Pua`a stated that Pluto "said that his cousin (Poe) is going to meet me in the baggage claim. He would identify himself by calling my name. When he called my name I just turned around and seen him so that's when I knew it was him. He took the cart from me and start walking towards the customs. . . ." This statement was redacted from the version of the statement presented to the jury in deference to Poe's *Bruton* rights. *See Bruton v. United States,* 391 U.S. 123 (1968)

Pua`a contends that this redaction undermined his defense and required severance. The redacted statements are not exculpatory as to Pua`a, however. They are instead inculpatory as to Poe, suggesting Poe's involvement was greater than he claimed. The statements are not

directly relevant to Pua`a's knowledge of the contents of the suitcase, the central issue in Pua`a's defense. Severance was not required simply because the entire statement could not be admitted. *See United States v. Lopez,* 898 F.2d 1505, 1510-11 (11th Cir. 1990) (severance not required where *Bruton* redactions not exculpatory but inculpatory).

■ Nor does the redaction violate the T.C.R.E. 106 "Rule of Completeness." *See Lopez,* 898 F.2d at 1511 n.11 (11th Cir. 1990) (rule of completeness "violated only when the [*Bruton* redaction] . . . effectively distorts the meaning of the statement or excludes information substantially exculpatory of the nontestifying defendant") (citations and quotation marks omitted). The redaction did not distort the meaning of Pua`a's statement or threaten to mislead the jury.

B. Sufficiency of the Evidence

■ Pua`a next claims that the government introduced insufficient evidence to sustain his conviction for "knowingly" possessing contraband.[1] Pua`a correctly notes that in reviewing sufficiency of the evidence claims we determine whether "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). Pua`a fails to note, however, that it is well within the province of the jury to "draw reasonable inferences from proven facts." *United States v. Boise,* 916 F.2d 497, 499 (9th Cir. 1990). Thus, "[c]ircumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction." *United States v. Montgomery,* 150 F.3d 983, 1001 (9th Cir.) (citation and quotation marks omitted), *cert. denied,* 119 S.Ct. 267 and 119 S.Ct. 460 (1998).

■ The government introduced uncontradicted testimony that Pua`a transported a suitcase containing several hundred grams of methamphetamine to Samoa. Pua`a paid for his first class airline ticket in cash. There was evidence the clothes in the suitcase fit Pua`a. Though Pua`a claimed to have been paid $500 at the Honolulu airport to take a suitcase of unknown contents to Samoa, he had only $5.29 on his person at the time of his arrest in Samoa. From these proven facts, the jury could reasonably infer Pua`a knew he was transporting contraband.[2]

---

[1] A.S.C.A. § 46.3201(c) imposes the scienter requirement of "knowingly" on all crimes of possession.

[2] We note that even in Pua`a's version of the facts, he accepted $500 from someone he believed to be a drug dealer to transport a suitcase to Samoa. From this alone, it may have been reasonable for the jury to infer his knowledge of the suitcase's contents. *Cf. United States v. Ramirez,* 176 F.3d 1179 (9th Cir. 1999) (might be reasonable to infer drug

45

## C. Ineffective Representation

■ Pua`a also contends the his trial counsel was ineffective because he failed to request a *Carter* "no inference" jury instruction.[3] *See Carter v. Kentucky,* 450 U.S. 288 (1981) (state courts must, upon request, instruct jury that no inference can be drawn from defendant's refusal to testify). The trial court only instructed the jury that "[t]he defendant is presumed to be innocent and does not have to testify or present any evidence to prove innocence."

■ Had Pua`a's trial counsel requested the "no inference" instruction, the trial court was constitutionally obligated to provide it.[4] Under *Strickland v. Washington,* 466 U.S. 668 (1984), however, we will reverse only if trial counsel's failure was deficient and prejudicial. To be deficient, the failure to request a "no inference" instruction must be "outside the wide range of professionally competent assistance."

---

smugglers do not entrust large drug shipments to unknowing couriers).

[3] Pua`a additionally raises the frivolous argument that trial counsel was incompetent for his failure to argue that the search of Pua`a's suitcase was not supported by reasonable suspicion in violation of Am. Samoa Const. Art. I, § 5. Border searches, however, need "only the articulation of some facts which would lead a reasonable and objective customs officer to believe the search to be necessary." *ASG v. Vagavao,* 3 A.S.R.3d 72, 75 (Trial Div., 1999). That standard being met, Pua`a's appeal on this issue is without merit.

[4] The government cites *United States v. Castaneda,* 94 F.3d 592, 596 (9th Cir. 1996), for the proposition that the instruction provided by the trial court satisfies *Carter.* We disagree with *Castaneda.* The plain language of *Carter* requires a "no inference" instruction upon request. *See Carter,* 450 U.S. at 300 ("[A] criminal trial judge must give a single 'no adverse inference' jury instruction when requested by defendant to do so."). *Carter* explicitly held the "presumption of innocence" instruction was not an adequate substitute. *See Carter,* 450 U.S. at 304. We conclude the "no obligation to testify" instruction is also not an adequate substitute. *See United States v. Brand,* 80 F.3d 560, 567 (1st Cir. 1996) (*Carter* not satisfied by instruction on burden of proof and obligation to testify). *See also United States v. Eiland,* 741 F.2d 738, 743 (5th Cir. 1984); *United States v. Bailie,* 99 F.3d 1147, 1996 WL 580350, *5 (9th Cir. 1996) (unpublished disposition) (defense counsel objected to "no inference" instruction because he felt "it may in some cases encourage the jury to draw adverse inferences from a defendant's silence"); *Hunter v. Clark,* 934 F.2d 856, 859 (7th Cir. 1991) (noting Indiana Supreme Court holds right to object to "no inference" instruction is necessary to right to silence). On the record before us, we cannot conclude that trial counsel's failure to request a "no inference" instruction was the result of incompetence rather than tactics.

*Strickland,* 466 U.S. at 690. To satisfy the prejudice prong, Pua'a must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The government is correct to note that competent defense counsel may specifically choose not to request a "no inference" instruction. The instruction is occasionally perceived as highlighting in the jurors' minds the defendant's failure to testify. *See, e.g., Lakeside v. Oregon,* 435 U.S. 333, 339 (1978).

D. Government Misconduct

█ There is no doubt government agents behaved quite reprehensibly during the trial. Agents talked to newspaper reporters and discussed their testimony with each other in direct violation of the trial court's orders. The trial court eventually held Customs Officer Omni and DEA Agent Haleck in contempt for their misconduct. When confronted by their violations, the agents appear to have even initially lied to the court. A third officer, Customs Officer Lautogia, apparently lied under oath on cross-examination regarding the number of times he had met with the prosecution to discuss his testimony. After hearing his testimony, the trial court concluded he "did not tell the truth in this matter." Pua'a moved for a mistrial on the basis of the misconduct. The trial court denied his motion, and Pua'a now claims this was error.

█ A trial court should grant a mistrial for prosecutorial misconduct if "it appears more probable than not that the alleged misconduct affected the jury's verdict." *United States v. Nelson,* 137 F.3d. 1094, 1106 (9th Cir. 1998) (citations and quotation marks omitted), *cert. denied,* 119 S.Ct. 231 *and* 119 S.Ct. 232. We review a trial court's denial of a mistrial motion for an abuse of discretion. *See United States v. Scholl,* 166 F.3d 964, 974 (9th Cir. 1999). We defer, of course, to a trial court's factual findings unless clearly erroneous. *See United States v. Doe,* 155 F.3d 1070, 1074 (9th Cir. 1998).

█ As to Officer Omni and Agent Haleck, the trial court determined that their misconduct, while not to "be lightly taken," did not "materially or prejudicially compromise or otherwise damage the defendants' defenses" because "the witnesses did not learn anything about the defenses or [sic] they would not have learned from [the prosecution] in discussing their testimony." Because Pua'a has not provided evidence that the trial court's determination is clearly erroneous, we defer to the trial court's factual determination that the misconduct did not affect the agents' testimony.

47

■ As to Officer Lautogia, his apparent misconduct occurred in open court. Defense counsel was given every opportunity to make hay out of the officer's misleading answers in cross-examination and closing argument. We are certain that catching government agents prevaricating on the stand provides a significant boost to any defense. Such behavior does not, thus, make a compelling case for a mistrial.

■ Pua`a requested the jury be instructed that if it "believes that a witness willfully and deliberately testified falsely, then it may disregard all of the witness' testimony." The trial court rejected Pua`a's request and instead instructed the jury that "[i]n considering the testimony of any witness, you may take into account . . . (5) whether the witness willfully testified falsely in any respect." Pua`a contends this was error.

We review as a matter of law whether a given jury instruction is an adequate substitute for a defendant's requested instruction. *See United States v. Gomez-Osorio*, 957 F.2d 636, 642 (9th Cir. 1992). Though the trial court's instruction may not have been as strongly worded as Pua`a may have wished, its meaning is identical to Pua`a's requested instruction: a witness' untruthfulness as to one issue may be used in evaluating her answers on other issues. There was no error.

E. Cumulative Errors

■ Finally, Pua`a argues that even though no individual error requires reversal, the cumulative effect of all these alleged errors requires reversal. *See United States v. Cruz*, 82 F.3d 856, 868 (9th Cir. 1996). Despite the unfortunate conduct of the government agents, we conclude Pua`a has not presented any trial error of significance; therefore, there is no cumulative error.

## Conclusion

The judgment of conviction is AFFIRMED.