**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JOSE MARTIN SOTO,
*Defendant-Appellant.*

No. 07-30011

D.C. No.
CR-06-02076-AAM

ORDER AND
OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Alan A. McDonald, District Judge, Presiding

Argued and Submitted
November 7, 2007—Seattle, Washington

Filed March 19, 2008

Before: William C. Canby, Jr., Susan P. Graber, and
Ronald M. Gould, Circuit Judges.

Per Curiam;
Concurrence by Judge Graber;
Concurrence by Judge Gould

**COUNSEL**

Tracy A. Staab, Research & Writing Attorney, Federal Defenders of Eastern Washington & Idaho, Spokane, Washington, for the defendant-appellant.

Thomas J. Hanlon, Assistant United States Attorney, Yakima, Washington, for the plaintiff-appellee.

## ORDER

The petition for panel rehearing is GRANTED. The memorandum disposition filed on November 28, 2007, is withdrawn and the Clerk is ordered to file the attached opinion in its place. New petitions for rehearing and petitions for rehearing en banc may be filed.

## OPINION

PER CURIAM:

Defendant Jose Martin Soto appeals his conviction for possession of methamphetamine with intent to distribute, 21 U.S.C. § 841(a). He argues that the district court violated *Carter v. Kentucky*, 450 U.S. 288 (1981), and *James v. Kentucky*, 466 U.S. 341 (1984), by failing to give his requested instruction that the jury make no adverse inference from his constitutionally protected choice not to testify. We hold that any error was harmless beyond a reasonable doubt. We also reject Defendant's other challenge to the jury instructions. We therefore affirm.

### FACTUAL AND PROCEDURAL HISTORY

Police arrested Lenise Acevedo on drug charges. She agreed to help them arrest several of her suppliers, including Defendant. After a controlled sale of methamphetamine at Defendant's house, police obtained and executed a search warrant. They arrested Defendant, who was asleep in bed, and searched his house. That search uncovered drugs hidden in the kitchen, in the bedroom where Defendant was sleeping, and

in a nearby bedroom; two scales commonly used by drug distributors in a kitchen drawer; and $537 in cash.

Defendant was indicted on one count of distribution of methamphetamine, 21 U.S.C. § 841(a), and one count of possession of methamphetamine with intent to distribute, *id.* He pleaded not guilty. In addition to the results of the search of Defendant's house, the primary evidence introduced by the government in the three-day jury trial was the testimony of Acevedo, who testified in exchange for a reduced sentence.

In a pretrial conference on August 12, 2006, the district court set a deadline of August 29—one week before trial—for proposed jury instructions to be submitted in writing by both parties. Neither party objected to the deadline or to the requirement of written proposals. Only the government submitted proposed jury instructions in writing; Defendant did not submit any proposed jury instructions, either orally or in writing.

At the close of trial and immediately before the parties' closing arguments, Defendant's counsel orally requested an instruction that the jury should not "hold . . . against him" the fact that Defendant had not testified. The court refused the instruction because no timely written request had been made.

After the parties gave their closing arguments, the court instructed the jury. The court charged the jury to consider the instructions "as a whole" and to presume Defendant's innocence, explained that the burden of proof beyond a reasonable doubt rested with the government, and defined "reasonable doubt." The instructions also included this statement: "Your sole interest is to seek the truth from the evidence in the case. You've been chosen and sworn as jurors in this case to try the issues of fact presented by the parties and determine the issue of guilt or innocence." The post-trial instructions did not

include a statement that the jury should draw no adverse inference from the Defendant's failure to testify.[1]

The jury convicted Defendant of possession, but acquitted him of distribution. The lower end of the Sentencing Guidelines range was 188 months, but the district court imposed a sentence of only 120 months—the statutory mandatory minimum. 21 U.S.C. § 841(b)(1)(A). Defendant timely appeals his conviction.

## STANDARDS OF REVIEW

We review de novo whether the district court committed reversible error by refusing to instruct the jury that it should draw no adverse inference from a defendant's failure to testify. *United States v. Castaneda*, 94 F.3d 592, 596 (9th Cir. 1996).

When a defendant fails to object at trial to jury instructions, we review for plain error. Fed. R. Crim. P. 52(b); *United States v. Lopez*, 477 F.3d 1110, 1113 (9th Cir.), *cert. denied*, 128 S. Ct. 131 (2007).

---

[1]Pretrial, the court cautioned the jury pool:

[Defendant's] not required to take the stand himself. . . . If he calls no witnesses, doesn't testify, . . . you're to draw no adverse presumption from that fact. . . .

   . . . .

   He may not get on the stand for all kinds of reasons[,] . . . [many of which] don't have anything really to do with this case. . . . You should simply remember that the burden lies over here [referring to the government].

## DISCUSSION

### A. *"No Adverse Inference" Instruction*

**[1]** In *Carter*, 450 U.S. 288, the Supreme Court "held that a trial judge must, if requested to do so, instruct the jury not to draw an adverse inference from the defendant's failure to take the stand." *James*, 466 U.S. at 342. The government argues that harmless error analysis applies to *Carter* error and that, even if the district court erred, any error was harmless beyond a reasonable doubt. We agree.[2]

**[2]** The Supreme Court has recognized that some errors—known as structural errors—"defy analysis by harmless-error standards because they affect the framework within which the trial proceeds." *United States v. Gonzalez-Lopez*, 126 S. Ct. 2557, 2564 (2006) (internal quotation marks and alteration omitted); *see generally Arizona v. Fulminante*, 499 U.S. 279, 307-10 (1991) (dividing errors into "trial errors" and "structural errors"). "If the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other constitutional errors that may have occurred are subject to harmless-error analysis. Only in rare cases has [the Supreme] Court held that an error is structural . . . ." *Washington v. Recuenco*, 126 S. Ct. 2546, 2551 (2006) (citations, internal quotation marks, and alterations omitted). The Court has expressly reserved the question whether harmless error analysis applies to *Carter* error. *James*, 466 U.S. at 351; *Carter*, 450 U.S. at 304.

**[3]** We hold that failure to give a *Carter* instruction is not a structural error, because it does not "affect the framework within which the trial proceeds." *Gonzalez-Lopez*, 126 S. Ct. at 2564 (alteration omitted). The types of errors deemed struc-

---

[2]We therefore need not reach the government's alternative argument that the district court did not err because it properly enforced the procedural requirements of Federal Rule of Criminal Procedure 30(a).

tural are different in kind from a failure to give a *Carter* instruction. *See Recuenco*, 126 S. Ct. at 2551 n.2 (cataloguing structural errors: "complete denial of counsel," "biased trial judge," "racial discrimination in selection of grand jury," "denial of self-representation at trial," "denial of public trial," and "defective reasonable-doubt instruction"). The failure to give a *Carter* instruction is more akin, for example, to the failure of a trial judge to instruct the jury on an element of the offense. *See Neder v. United States*, 527 U.S. 1, 9 (1999) (holding that failure to instruct the jury on an element of the offense is not structural error because it "does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence"). Moreover, a *Carter* instruction is not *required* in every criminal trial; it is merely *available* if a defendant so requests. *Carter*, 450 U.S. at 305. We therefore join the only other circuit to have addressed the question and hold that *Carter* error is subject to harmless error analysis. *See United States v. Brand*, 80 F.3d 560, 568 (1st Cir. 1996) (holding that the "failure to give a requested *Carter* instruction falls comfortably" in the category of errors amenable to harmless-error analysis); *see also People v. Evans*, 72 Cal. Rptr. 2d 543, 549-50 (Ct. App. 1998) (reaching the same conclusion).

**[4]** Here, assuming that the district court erred, its failure to give a "no adverse inference" instruction was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 24 (1967) (stating the standard that, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt"). The evidence that Defendant *distributed* methamphetamine was not particularly strong, but the jury acquitted Defendant of that charge. The uncontradicted evidence that Defendant *possessed* methamphetamine with intent to distribute, by contrast, was overwhelming. *See Brand*, 80 F.3d at 568 (finding that any *Carter* error was harmless beyond a reasonable doubt because the uncontradicted evidence against the defendants was "overwhelming").

**[5]** When police executed the search warrant of Defendant's own home, Defendant was the only person there. The police found methamphetamine hidden in the bedroom where Defendant was sleeping, as well as in a nearby bedroom and in the kitchen. They also found drug-weighing scales and a substantial amount of cash. Because the evidence demonstrated that Defendant was the sole occupant of his residence and that drugs, cash, and scales were discovered in the residence, we hold that the district court's failure to instruct the jury not to draw any adverse inference from Defendant's failure to testify was harmless beyond a reasonable doubt.

Defendant asserts that the error cannot be harmless because the question for the jury was one of credibility. Defendant's theory of the case was that Acevedo planted drugs in the house before the controlled buy and before the execution of the search warrant and then lied about it on the witness stand. According to Defendant, the jury naturally would look to him to dispel Acevedo's account of the events, and the district court's failure to instruct on his silence therefore had an indisputable effect on the jury's deliberations. We might be persuaded by Defendant's argument were it not for the fact that the jury *acquitted* him of distribution. Logically, on this record, the jury rejected Acevedo's testimony, which was the only link to the distribution charge. That is, the jury's determination on the possession count, which was supported mainly by the physical evidence, did not turn on the question of Acevedo's credibility.

We have addressed the question of reversible error in this context once before. In *Castaneda*, 94 F.3d at 596, we assessed similar facts and held that "[t]he district court did not commit reversible error by rejecting Castaneda's proposed [*Carter*] instruction." *Castaneda* is not a model of clarity, as at least one court has observed. *See Evans*, 72 Cal. Rptr. 2d at 546 (noting that "the opinion is not entirely clear as to the grounds on which the court rested its decision"). Defendant also contends that *Castaneda* was wrongly decided. But our

holding today rests on independent grounds that are different from, but not inconsistent with, the reasons given in *Castaneda*. We therefore need not address the correctness of *Castaneda* nor, if we were to agree that *Castaneda* was wrongly decided, request en banc rehearing. *See Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc) (holding that, in the absence of an intervening Supreme Court decision, only the en banc court may overrule a decision by a three-judge panel).

B.  *Jury Instructions on the Government's Burden of Proof*

We hold that the district court did not err when instructing the jury on the government's burden of proof. *See United States v. Olano*, 507 U.S. 725, 732 (1993) (holding that plain error requires, first, that the district court erred).

**[6]** "In evaluating the constitutionality of the jury charge, we must determine whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the requirements of due process." *Ramirez v. Hatcher*, 136 F.3d 1209, 1211 (9th Cir. 1998) (internal quotation marks omitted). The challenged instruction is not examined in isolation; "[r]ather, taken as a whole, the instructions must correctly convey the concept of reasonable doubt to the jury." *Id.* (internal quotation marks and alterations omitted).

**[7]** Here, the district court repeatedly emphasized the government's burden to prove all elements of the offense beyond a reasonable doubt.[3] In light of those clear jury instructions,

---

[3]The district court's charge included the following jury instructions:

The burden is always upon the prosecution to prove guilt *beyond a reasonable doubt*. This burden never shifts to a defendant. . . .

The test for conviction is proof *beyond a reasonable doubt*. It is not required that the government prove guilt beyond all possi-

we think that there is no likelihood that the jury understood that any lower standard of proof could suffice. The district court's statement challenged by Defendant—"Your sole interest is to seek the truth from the evidence in the case. You've been chosen and sworn as jurors in this case to try the issues of fact presented by the parties and determine the issue of guilt or innocence"—is correct and does not contradict its numerous instructions on the government's burden of proof.

## CONCLUSION

Any error stemming from the district court's failure to give a *Carter* instruction was harmless beyond a reasonable doubt,

---

ble doubt, but *reasonable doubt*. A *reasonable doubt* is a doubt based upon reason and common sense, the kind of doubt that would make a reasonable person hesitant to act. Proof *beyond a reasonable doubt* is proof that leaves you firmly convinced that the defendant is guilty. A *reasonable doubt* may arise not only from the evidence, but also from the lack of evidence.

If after a careful and impartial consideration of all of the evidence, you are not convinced *beyond a reasonable doubt* that the defendant is guilty, it is your duty to find the defendant not guilty. On the other hand, if after a careful and impartial consideration of all the evidence, you are convinced *beyond a reasonable doubt* that the defendant is guilty, it's your duty to find the defendant guilty.

. . . .

The defendant['s plea of] "not guilty" . . . imposes on the government the burden of establishing each of these elements by proof *beyond a reasonable doubt*.

. . . It is sufficient if the evidence in the case establishes *beyond a reasonable doubt* that the offense was committed on a date reasonably near the date alleged.

. . . [T]he government must prove each of the following elements [on Count 1] *beyond a reasonable doubt*.

. . . .

. . . [T]he government must prove each of the following elements [on Count 2] *beyond a reasonable doubt*.

(Emphases added.)

and the district court properly instructed the jury on the government's burden of proof.

AFFIRMED.

---

GRABER, Circuit Judge, concurring:

I write separately to address an additional, alternative ground for affirmance not reached by the opinion: whether the district court erred by enforcing the procedural requirements of Federal Rule of Criminal Procedure 30(a). Op. at 2615 n.2. In my view, the district court did not abuse its discretion when it refused Defendant's proposed instruction on the ground that he had failed to make a "proper request" within the meaning of *Carter v. Kentucky*, 450 U.S. 288, 305 (1981).

Rule 30(a) of the Federal Rules of Criminal Procedure provides:

> Any party may request in writing that the court instruct the jury on the law as specified in the request. The request must be made at the close of the evidence or at any earlier time that the court reasonably sets. When the request is made, the requesting party must furnish a copy to every other party.

Pursuant to Rule 30(a), the district court here set a deadline of a week before trial for submission of proposed jury instructions in writing. Defendant did not object, and he has never argued that the date or the requirement of written proposals was unreasonable. Defendant submitted no written proposed jury instructions at any time.

At the close of evidence, the following colloquy occurred between the judge and Defendant's counsel:

MR. SCOTT:   Your Honor, the government has not proposed the instruction because the defendant, rather, has not testified. And I would ask that that — I believe that that is typically given, but that was not part of the proposed instructions, and I would just ask formally on the record that the court instruct the jury that they should not take that and hold that against him.

THE COURT:   Counsel, I'm not going to do that.

MR. SCOTT:   I understand.

THE COURT:   You had the opportunity to submit instructions that you proposed. That's what the rule [Rule 30 of the Federal Rules of Criminal Procedure] requires. And the court would then have an opportunity to look at it in context and hear from the government concerning any objections it might have. I'm not going to make one up. I don't think you need to be concerned. I really think that, from the instructions the court proposes to give, that his constitutional rights are protected. And I spent a good deal of time talking to them about it when they were being selected.

MR. SCOTT:   I think that you have, Your Honor.

THE COURT:   And I'm not going to deal with instructions unless they're proposed to the court, provided according to the rules.

In short, Defendant's proposed jury instruction was both untimely and in incorrect form. Citing the requirements of Rule 30, the district judge rejected Defendant's request. In my view, the district court did not err.

The bare failure to give a *Carter* instruction is not itself error. It is only when the defendant makes a proper request that the trial court is obliged to give the instruction. The question, then, is whether the trial court constitutionally can impose reasonable restrictions on the form and timing of that request.[1]

Both *Carter* and *James v. Kentucky*, 466 U.S. 341 (1984), strongly suggest that the defendant's right to a *Carter* instruction does not trump reasonable procedural rules. The Court in *Carter* concluded:

> The freedom of a defendant in a criminal trial to remain silent unless he chooses to speak in the unfettered exercise of his own will is guaranteed by the Fifth Amendment and made applicable to state criminal proceedings through the Fourteenth. And the Constitution further guarantees that no adverse inferences are to be drawn from the exercise of that privilege. Just as adverse comment on a defendant's silence cuts down on the privilege by making its assertion costly, the failure to limit the jurors' speculation on the meaning of that silence, *when the defendant makes a timely request* that a prophylactic instruction be given, exacts an impermissible toll on the full and free exercise of the privilege. Accordingly, we hold that a state trial judge has the constitutional obligation, *upon proper request*, to

---

[1]There is no doubt that the district court generally can impose such restrictions. *See* Fed. R. Crim. P. 30(a); *United States v. Cunningham*, 194 F.3d 1186, 1200 (11th Cir. 1999) (affirming the district court's denial of a proposed instruction because it was not submitted in writing); *United States v. Johnson*, 713 F.2d 633, 652-53 (11th Cir. 1983) (same: because the request was untimely); *United States v. Lustig*, 555 F.2d 737, 750-51 (9th Cir. 1977) (holding that any jury instruction error by the district court was "excusable in light of [the defendant's] tardiness" in submitting jury instructions after the close of evidence rather than five days before trial, as required by local rule).

> minimize the danger that the jury will give evidentiary weight to a defendant's failure to testify.

450 U.S. at 305 (citations and internal quotation marks omitted) (emphases added). In *James*, the entire issue the Court faced was whether the petitioner had procedurally defaulted by requesting the instruction in incorrect form by using the term "admonition" rather than "instruction." 466 U.S. at 342. Although the Court concluded that, under Kentucky law, the procedural error was nonexistent, or slight at best, *id.* at 348-49, its reasoning inescapably suggests that a more firmly rooted and clear-cut procedural rule would have changed the outcome.

Admittedly, *Carter* and *James* were appeals from state cases, and the issue was whether an independent and adequate state ground barred the federal courts from considering the constitutional claim. But if state courts are free to impose procedural requirements that defendants make a "proper request," *Carter*, 450 U.S. at 305, there is no principled reason why federal courts could not do the same. In fact, the Federal Rules of Criminal Procedure *do* impose certain requirements, including that proposed instructions be submitted in timely fashion and in writing. Fed. R. Crim. P. 30(a).

Allowing district courts to impose reasonable procedural restrictions on requests for jury instructions (including a *Carter* instruction) makes sense. A contrary rule would mean that the district court would be at the mercy of a defendant, no matter when or how a request is made and no matter how reasonable the court's directions. Defendant here complains that he did not submit the instruction because he was unsure before trial whether he would testify. Although the applicability of that argument in this particular case is doubtful,[2] there

---

[2] Defendant submitted *no* proposed jury instructions, so it is questionable whether he truly mulled over the possibility of submitting this one *particular* instruction.

still is no conflict with the district judge's requirements: Defendant clearly could have submitted a conditional jury instruction, to be read if Defendant indeed invoked his right not to testify.

That reasonable restrictions may be imposed on the form and timing of a defendant's request for a *Carter* instruction does not mean that district courts could reject reasonable requests by a defendant. Here, however, the district court did not abuse its discretion in rejecting Defendant's request. The request was untimely because it was made for the first time several days after the deadline and at the end of a three-day trial, and Defendant neither objected to the reasonableness of the deadline nor requested an extension. The request was not in the correct form because it was not submitted in writing. Defendant did not ask for time to submit the request in writing. To the contrary, even though the judge asked both counsel if they wished to proceed that afternoon or wait until the next day, Defendant's counsel responded that he wished to proceed immediately. The request was not in the correct form also because it was only a general request for the instruction, not a succinct proposed instruction: "I would just ask formally on the record that the court instruct the jury that they should not take that and hold that against him." The district court explained its reasons for rejecting that request, and Defendant acceded.

I emphasize that a district court might well abuse its discretion if it applied procedural requirements rigidly, even if the requirements were consistent with Rule 30. A mere technical failure or a slight untimeliness likely would not trump the strong reasons behind the constitutional right to the *Carter* instruction. But the several failures in this case and the wholly reasonable approach and explanations by the district court counsel against reversal.

I acknowledge that the Fifth Circuit reached a different conclusion in *United States v. Eiland*, 741 F.2d 738, 742 (5th Cir. 1984):

> [Defendant's] objection to the omission of this charge had the same effect as a valid request for the instruction. We have cautioned against blindly applying the procedures for requesting or objecting instructions so as to create a "trap for the unwary." *United States v. Davis*, 583 F.2d 190, 195 (5th Cir. 1978). Eiland's objection and the court's response . . . clearly preserved the defendant's constitutional right to an instruction on his failure to testify.

(Footnote omitted.) But *Eiland* is factually distinguishable. In that case, the district court's only stated reason for not including the instruction was that the court thought that the other instructions were sufficient. *See id.* at 742 n.1 ("Well, I told [the jury] several times that the defendant is not required to prove his innocence, doesn't have to produce any evidence at all. I think that is sufficient."). On that point, the district court was wrong under Fifth Circuit precedent, and the Fifth Circuit reversed on that ground. *Id.* at 743. It appears that the defendant's request in *Eiland* was timely and that the government did not argue that the defendant had violated Rule 30's requirement that the proposed instruction be in writing. Here, moreover, the district court clearly explained the required procedures, so there was no "trap for the unwary."

In conclusion, I agree fully with the opinion that any error was harmless beyond a reasonable doubt. Additionally, the district court did not abuse its discretion by refusing to give Defendant's proposed instruction that was untimely, not in writing, not in precise form, and in violation of Rule 30(a).

---

GOULD, Circuit Judge, concurring:

I join the per curiam opinion in full. Given the other evidence of Soto's guilt on the possession offense, and the fact that he was acquitted on the distribution offense, the error

caused by the judge's refusal to instruct the jury as Soto had requested regarding Soto's failure to testify was harmless beyond a reasonable doubt. I write separately, however, to state my view that the refusal of the district court to give such an instruction when requested at trial *was* error, and that our precedent of *United States v. Castaneda*, 94 F.3d 592 (9th Cir. 1996) which seems to reach a contrary conclusion,[1] was wrongly decided and, at an appropriate opportunity, should be revisited through our en banc process.

The Supreme Court has stated in no uncertain terms that judges presiding over jury trials have a "constitutional obligation . . . to minimize the danger that the jury will give evidentiary weight to a defendant's failure to testify" and that they are to discharge this obligation by instructing the jury, when a defendant properly requests such an instruction, that the jury may draw no adverse inference from the defendant's decision not to take the stand. *See Carter v. Kentucky*, 450 U.S. 288, 305 (1981); *see also James v. Kentucky*, 466 U.S. 341, 342 (1984) (reaffirming the *Carter* rule). While purporting to acknowledge this Supreme Court authority, our opinion in *Castaneda* effectively ignored it by holding that a model Ninth Circuit jury instruction regarding the presumption of

---

[1]It is unclear whether *Castaneda* held that the failure to give a "no adverse inference" instruction was not error at all because the substance of that proposed instruction was adequately covered by other instructions that the jury was given, or whether the *Castaneda* court concluded that there was error under *Carter* but that the error was harmless because the judge made remarks during voir dire about the defendant's right not to testify and cautioned that "if he exercises that right, you cannot allow that to affect your determination of the issues." *See Castaneda*, 94 F.3d at 596. In my view, this confusion about the proposition for which *Castaneda* actually stands is one of the chief problems with the opinion, but I believe that either interpretation is inconsistent with the Supreme Court's guidance in *Carter* and *James*. Nothing in the Supreme Court's precedents on this issue suggests that the judge's "constitutional obligation" to warn the jury not to give evidentiary weight to the defendant's failure to testify can be met through statements made during voir dire rather than a formal jury instruction, when requested, at the close of trial.

innocence and the government's burden of proving guilt beyond a reasonable doubt "sufficiently covered the substance of Castaneda's proposed instruction: the defendant's failure to testify does not lessen the government's burden to prove its case." *Castaneda*, 94 F.3d at 596.

In deciding *Carter*, however, the Supreme Court dismissed an almost identical "presumption of innocence" jury instruction as "no substitute for the explicit instruction that the petitioner's lawyer requested." *Carter*, 450 U.S. at 304. The Court reasoned that while "the Fifth Amendment privilege and the presumption of innocence are closely aligned[,] . . . these principles serve different functions," and so the explicit "no adverse inference" instruction, when requested by a defendant, is still required by the Fifth and Fourteenth Amendments. *See id.* at 304-05. Thus, *Castaneda* represents a mistake waiting to be corrected.

I hope that when a proper occasion arises, a larger complement of our court's judges will remedy the confusion caused by *Castaneda* and bring this circuit's jury instruction jurisprudence into complete harmony with the Supreme Court's mandate in *Carter*. Following the Supreme Court's advice in *Carter* will ensure fairness to those accused of crimes and help to attain a superior criminal procedure.